A06A1523. POGUE et al. v. GOODMAN et al.
(638 SE2d 824)

BERNES, Judge.

In this medical malpractice action, Rebecca Pogue and John Pogue appeal from the trial court's grant of summary judgment to the

appellees Michael Louis Goodman, M.D., and Richardson & Goodman Neurosurgical Associates, P.C., on the grounds that the statute of limitation had expired. For the reasons that follow, we affirm.

On review from the grant of summary judgment, we conduct a de novo review of the law and evidence to determine whether there exists a genuine issue of material fact, viewing the evidence in the light most favorable to the nonmovant. *Taylor v. S & W Dev.*, 279 Ga. App. 744 (632 SE2d 700) (2006). So viewed, the record reflects that Dr. Goodman performed surgery on Ms. Pogue on August 14, 2001. On that date, Dr. Goodman removed a morphine pain pump that he had inserted in Ms. Pogue approximately six years earlier and inserted a new one. The new pain pump was implanted in a pouch of skin embedded in Ms. Pogue's abdominal wall. A drug delivery catheter, which Dr. Goodman inserted into Ms. Pogue's spine and threaded up her spinal canal, was attached to the pump. The pump and the attached catheter were intended to deliver a constant dose of medication into Ms. Pogue's spinal canal and relieve the pain Ms. Pogue had been experiencing in her lumbar spine.

According to Dr. Goodman, his practice as to morphine pumps was to advance the end of the catheter to at least the level of the mid-thoracic spine in order to maximize pain relief for his patients and also to reduce the risk that the catheter would be pulled out of the spinal canal during normal patient movement. During his deposition, Dr. Goodman admitted that a radiologist who had reviewed Ms. Pogue's post-surgery x-ray noted that the x-ray did not disclose the end location of the catheter and recommended additional x-rays to determine its location. However, Dr. Goodman believed that because narcotic pain medication rapidly diffuses through spinal fluid, the specific height of the distal end of the catheter was immaterial so long as it reached the mid-thoracic region.

Almost immediately after the August 14, 2001 surgery, Ms. Pogue began to experience symptoms that she believed were related to the new pain pump system. She reported that she felt "fuzzy-headed" and fell asleep at random times of the day while doing everyday activities. She indicated that she believes that one such episode caused her to have an accident while driving in November 2001. She also did not experience the same level of pain relief that she had attained with her first morphine pump system. Ms. Pogue testified that the frequency of these events increased over time, and she believed that the episodes seemed to worsen as the dosage of her medication was increased.

At some point after the surgery, Ms. Pogue began seeing a new pain physician. In October 2003, her new physician became concerned about the insufficiency of Ms. Pogue's pain relief and performed a procedure to evaluate the pain pump system. The procedure

revealed that the drug delivery catheter that Dr. Goodman had implanted traveled the length of her spinal canal such that the end actually reached into her cranial cavity.

Ms. Pogue subsequently consulted with another physician who agreed that the tip of the catheter was too high in the spinal canal and recommended the insertion of a new catheter at a different location in the spine. The physician concluded that actual removal of the catheter could cause life-threatening complications and so instead recommended that the catheter be disconnected from the pain pump but not removed, and that a replacement catheter be inserted lower in the canal. Following this advice, Ms. Pogue underwent surgery late in 2003. Since that time, her symptoms of being "fuzzy-headed" and randomly falling asleep have resolved, and her pain relief has improved.

Appellants filed the instant medical malpractice complaint against Dr. Goodman and his practice on August 6, 2004, nearly three years after Dr. Goodman performed the surgery at issue, but less than a year after the test revealed that the catheter had extended into her cranial cavity. In her complaint, Ms. Pogue alleges that Dr. Goodman negligently placed a "foreign object" into her spine and cranial cavity. She also alleges that he then fraudulently concealed the alleged negligent placement of the catheter by intentionally withholding from her information that the catheter had been misplaced. Mr. Pogue asserted a claim for loss of consortium.

The trial court granted appellees' motion for summary judgment after finding that the relevant statute of limitation had expired. Appellants contend the trial court erred in granting appellees' motion for two reasons. We will address each in turn.

1. Appellants first argue that the catheter constituted a foreign object as contemplated by OCGA § 9-3-72 and that the statute of limitation therefore did not expire until one year following the date of appellants' discovery of the foreign object.[1]

Generally, a medical malpractice action must be brought within two years of the date on which the injury arising from a negligent act occurred. OCGA § 9-3-71 (a). However, OCGA § 9-3-72 sets forth the following exception to the two-year limitation:

> The [two-year statute of limitation for medical malpractice actions] shall not apply where a foreign object has been left in a patient's body, but in such a case an action shall be

---

[1] Appellants contend that the "foreign object" was not discovered until October 2003 when Ms. Pogue learned that the tip of the catheter extended into her cranial cavity and that their action filed less than one year later in August 2004 was therefore timely.

brought within one year after the negligent or wrongful act or omission is discovered. For the purposes of this Code section, the term "foreign object" shall not include a chemical compound, fixation device, or prosthetic aid or device.

We have interpreted the term "foreign object" to include only those objects that are inadvertently left within a patient's body. See *Shannon v. Thornton*, 155 Ga. App. 670 (272 SE2d 535) (1980). Where "an object is purposely placed in a body[,] it cannot be said to have been 'left,' which, in the context of the statute, connotes a non-purposeful act." (Punctuation omitted.) Id. See also *Ringewald v. Crawford W. Long Mem. Hosp.*, 258 Ga. 302, 304 (2) (368 SE2d 490) (1988) (recognizing that a bulldog clamp left in a patient's body constitutes a "foreign object" under OCGA § 9-3-72 because the physician had not intended to leave it in the patient's body following the surgical procedure), overruled on other grounds, *Spivey v. Whiddon*, 260 Ga. 502 (397 SE2d 117) (1990).

Here, the undisputed evidence showed that Dr. Goodman intentionally placed the catheter in Ms. Pogue's body for the purpose of relieving her pain. It cannot be said that the catheter in this case is a "foreign object" inadvertently "left" in Ms. Pogue's body. Compare *Ivey v. Scoggins*, 163 Ga. App. 741, 742-743 (2) (295 SE2d 164) (1982) (holding that when a doctor conducting a surgical procedure negligently and inadvertently placed and left a suture in an organ not involved in the procedure, the suture was a "foreign object" under OCGA § 9-3-72). That Dr. Goodman may have negligently placed the catheter does not alter our conclusion. This case does not fall within the exception set forth in OCGA § 9-3-72, and the general two-year statute of limitation set forth in OCGA § 9-3-71 applies.

2. Appellants argue that the statute of limitation was tolled by Dr. Goodman's alleged fraudulent concealment of his negligence and did not begin to run until the date appellants discovered the fraud.[2] "Actual fraud, through nondisclosure of a known injury by the defendant and through acts to conceal the injury, which deters or debars the bringing of the action, tolls the statute of limitation and tolls the running of the statute until the discovery of the fraud. OCGA § 9-3-96." (Citations omitted.) *Miller v. Kitchens*, 251 Ga. App. 225, 226 (a) (553 SE2d 300) (2001). In order to illustrate fraud sufficient to toll the statute of limitation, a patient who alleges to be negligently injured by a physician must show that the physician knew that the patient was injured in the ways that the patient contends; knew that

---

[2] Appellants contend the fraud was discovered in October 2003 when they learned that the catheter extended into Ms. Pogue's cranial cavity.

his or her violations of the standard of care caused the injuries; and intentionally concealed such facts. Id. at 226-227 (a).

Thus, in the instant case, Ms. Pogue must show that Dr. Goodman knew that he had placed the drug delivery catheter into her cranial cavity; knew that his placement of the catheter into her cranial cavity constituted negligence; knew that his negligence was causing Ms. Pogue's injuries; and then, armed with this information, intentionally concealed it from Ms. Pogue. *Miller*, 251 Ga. App. at 226-227 (a); *Price v. Currie*, 260 Ga. App. 526, 528-529 (1) (580 SE2d 299) (2003) (plaintiff must show a "known failure to reveal negligence in order to show fraud") (citation and punctuation omitted).

Ms. Pogue contends in her complaint that Dr. Goodman had actual knowledge that he had misplaced the catheter in her cervical spine and intentionally withheld this information during his treatment of her. However, it is clear from the record and the appellants' brief that Ms. Pogue bases her allegation of Dr. Goodman's knowledge and intent upon Dr. Goodman's admission in his deposition. As previously stated, Dr. Goodman admitted that he was aware that a post-surgery x-ray revealed that the location of the tip of the catheter was unknown and that the radiologist recommended that additional x-rays be taken to determine its location. Dr. Goodman also admitted that he did not recall ever passing on this information to Ms. Pogue or her other physicians.

Even taking as true Ms. Pogue's allegations, they do not set forth facts sufficient to toll the statute of limitation based upon actual fraud. Ms. Pogue has not argued or put forth any evidence that Dr. Goodman knew that he had extended the drug delivery catheter into her cranial cavity. Indeed, it appears undisputed in the record that he first learned of this fact when he was informed by his attorneys in conjunction with this lawsuit.

Moreover, Ms. Pogue does not allege that Dr. Goodman intentionally withheld information that the catheter had been misplaced, but rather that he failed to inform Ms. Pogue's other physicians that its exact location was unknown. Indeed, Ms. Pogue does not allege nor is there any evidence to suggest that the radiology report upon which she relies was not included in the records that Dr. Goodman forwarded to her other physicians. In sum, appellants failed to produce evidence sufficient to toll the statute of limitation on the basis of fraudulent concealment.

The applicable two-year statute of limitation began running in 2001 and, as correctly found by the trial court, had expired by the time the present action was filed in 2004. OCGA § 9-3-71 (a). The trial court did not err in granting appellees' motion for summary judgment.

*Judgment affirmed. Andrews, P. J., and Barnes, J., concur.*

DECIDED NOVEMBER 14, 2006.

*Thomas F. Tierney, Paul S. Liston,* for appellants.
*Huff, Powell & Bailey, Anna B. Fretwell,* for appellees.