MAX N. TOBIAS, JR., Judge.
| ./The plaintiff/appellant, Barbara Holt (“Ms. Holt”), appeals from the summary judgment entered in favor of defendant/ap-pellee, Donald Richardson, M.D. (“Dr. *36 Richardson”), on her claim of medical malpractice. After reviewing the record and applicable law, we affirm the judgment.
In her petition, Ms. Holt claims that in February 2001, Dr. Richardson installed a morphine pump in an attempt to alleviate her persistent pain. In October 2001, Ms. Holt noticed that the pump was protruding through the abdominal wall. She contacted Dr. Richardson, who allegedly told her that a stitch had worked its way out. When hot compresses did not resolve the problem, Ms. Holt went to the hospital where Dr. Richardson removed the pump, leaving a hole in her abdomen. In the months that followed, Ms. Holt suffered chronic illness and infection.
In March 2002, Ms. Holt maintains that it was discovered that the infection was caused by a piece of mesh that had been left in her when Dr. Richardson removed the morphine pump. Ms. Holt claims that she later developed a serious | .-¿infection that required additional medical treatment. On 5 September 2002, Ms. Holt filed a complaint with the Louisiana Patient’s Compensation Fund (“PCF”) against Dr. Richardson, alleging medical negligence with regard to his surgical implantation of the morphine pump and its subsequent removal.
The matter was submitted to a medical review panel, whose members unanimously concluded that Dr. Richardson had not deviated from the applicable standard of care as charged in the complaint. Specifically, the members of the panel found that: (1) the initial surgery performed was appropriate; (2) retained foreign bodies are a known consequence of the procedure; and (3) the subsequent surgery was done to remove the retained foreign body.
Ms. Holt thereafter instituted suit on 30 December 2004. Dr. Richardson subsequently filed an answer to the petition and followed with a motion for summary judgment. In the memorandum in support, Dr. Richardson chronicles a doctor-patient relationship that began in October 1995 when Ms. Holt presented with a history of cervical surgery for spinal stenosis. She had already undergone four surgeries related to her lumbosacral spine and had cervical and lumbar dorsal column stimu-lators in place since 1984. However, when she saw Dr. Richardson, the batteries of the stimulators were depleted. Over the years, many physicians treated Ms. Holt for failed back syndrome with chronic pain and she underwent more than 20 surgical procedures to address her pain, including multiple long-term placements of medical devices.
|4In July 2000, after numerous procedures to address the functioning of her medical devices, Ms. Holt sought an intra-thecal morphine pump. On 27 September 2000, Dr. Richardson, who was able to get the lumbar dorsal stimulator working again, saw Ms. Holt, but readings indicated that the batteries were low. Again, Ms. Holt requested implantation of a morphine pump.
In February 2001, Dr. Richardson performed surgery and placed a morphine pump just superficial to Ms. Holt’s abdominal musculature. The morphine pump was designed to remain in the body long-term, just as all of Ms. Holt’s other medical devices had been.
In October 2001, Ms. Holt developed a wound at the site of the morphine pump and home health was prescribed for wound care. Dr. Richardson removed the pump, noticing that since its implantation, Ms. Holt had lost weight, changing the body habitus and causing the pump to come very close to the skin; eventually it came through her skin due to a persistent cough secondary to pneumonia.
*37 On 18 January 2004, Dr. Richardson propounded interrogatories requesting the identity of any experts who would testify at trial. Ms. Holt did not respond to the discovery. Thereafter, Dr. Richardson filed a motion for summary judgment on the basis that Ms. Holt could not carry her burden of proving medical negligence without the testimony of an expert witness to establish the standard of care, breach of that standard of care, and causation. In support of his motion, Dr. Richardson submitted the decision of the medical review panel, as well as affidavits from two of the panel members. In particular, John F. Schuhmacher, M.D. (“Dr. \ BSchuhmacher”) stated that there are certain medical devices or implements that are designed for long-term placement in the human body. In Ms. Holt’s case, the morphine pump and the fixation devices used (i.e., Dacron sac and mesh) were intended to remain in the body. Dr. Schuhmacher stated that mesh is commonly used in hernia repair because it becomes enmeshed with human tissue allowing for better healing and stability. Mesh is routinely left in the body permanently. In Ms. Holt’s case, the morphine pump was being removed because it had become mal-positioned over time; it was not medically necessary to then remove all associated mesh. In the absence of any medical reasons for further exploration, Dr. Richardson was not required to discover and remove every piece of mesh and/or Dacron sac placed in the prior surgery.
Ms. Holt opposed the motion, arguing that the pump had not been installed deeply enough in her abdomen. She further claimed that the mesh that Dr. Richardson negligently left in her caused serious infection and other injury. Relying on the Supreme Court case of Pfiffner v. Correa, 94-0924, 94-0963, 94-0992 (La.10/17/94), 643 So.2d 1228, Ms. Holt argued that she is not required to produce expert testimony in order to prevail on a medical malpractice claim when a physician does an obviously careless act, such as leaving a sponge in a patient’s body, from which a lay person could infer negligence.
In the documentation submitted in support of his motion for summary judgment, Dr. Richardson distinguished between an object negligently left in the body and an object that is purposefully placed in the body. To support the ^distinction, Dr. Richardson referred to the affidavits of the medical experts entered into the record. The trial court asked Ms. Holt if she had any expert witnesses who could speak to the issue of the mesh. Ms. Holt argued that the issue did not require expert testimony for a decision, as this was a “foreign body” case.
The trial court disagreed.
Have you talked to any — My problem is that I’ve got their expert saying that this is not considered a foreign body because of the manner in which it is used, not that it’s not a foreign body, but that it is not considered a foreign body because of the manner in which it is used.
[[Image here]]
My inclination is to grant the summary judgment. But I’ll hold off on granting the summary adjustment [sic]. How much time do you think you need to at least consult with other physicians to determine whether or not — what they suggest as relates to the use of and the appropriateness of leaving the mesh in?
[[Image here]]
What I’ll do is — This how I handle this. I’ll take it under advisement, okay, but what I’ll allow is — It won’t be considered truly under advisement until 60 days from now. Sixty days from now, *38 plaintiffs counsel — By 60 days from now, so that we’re clear, plaintiffs counsel needs to have submitted evidence either contrary to what defense counsel says as it relates to the issue of the mesh, or, failing to do so, I’m gonna render on what’s in front of me. Okay?
On 7 April 2006, Ms. Holt requested an additional 15 days to retain an expert. When nothing further was filed, the trial court entered judgment in favor of Dr. Richardson on 16 May 2006.
The standard of appellate review of a motion for summary judgment is de novo.
|7The sole issue presented for consideration is whether expert testimony was required in this case. Ms. Holt, calling this a “foreign body” case, answers in the negative. However, Dr. Richardson answers in the affirmative because he argues that this is not a “foreign body” case; the material in question, surgical mesh, was purposefully and appropriately placed in Ms. Holt for long term, even permanent, retention. We note that this is an issue of first impression, not only in this circuit, but also in the state.
Pursuant to La. R.S. 9:2794, the plaintiff must prove in a medical malpractice case:
(1) The degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians, dentists, optometrists, or chiropractic physicians licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances ...
(2) That the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill.
(3)That as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.
In Pfiffner v. Correa, 94-0924, 94-0963, 94-0992 (La.10/17/94), 643 So.2d 1228, however, the Supreme Court held:
The jurisprudence has also recognized that there are situations in which expert testimony is not necessary. Expert testimony is not required where the physician does an obviously careless act, such as fracturing a leg during examination, amputating the wrong arm, dropping a knife, scalpel, or acid on a patient, or leaving a sponge in a patient’s body, from which a lay person can infer negligence. See Hastings v. Baton Rouge Gen. Hosp., 498 So.2d 713, 719 (La.1986). Failure to attend a patient when the circumstances demonstrate the serious ^consequences of this failure, and failure of an on-call physician to respond to an emergency when he knows or should know that his presence is necessary are also examples of obvious negligence which require no expert testimony to demonstrate the physician’s fault. See id. at 719-20.
Id. at p. 9, 643 So.2d at 1234.
The question then is whether this is a case of such obvious negligence that no expert testimony is necessary for Ms. Holt to prevail at trial. Because no statute addresses this issue and no Louisiana cases exist to provide guidance, we have surveyed other states for cases on point.[1] *39 In Rockefeller v. Moront, 81 N.Y.2d 560, 601 N.Y.S.2d 86, 618 N.E.2d 119 (App.1993), the issue was whether a suture that was improperly affixed to an organ not involved in the operation for which the plaintiff sought medical treatment was a “foreign object” sufficient to delay accrual of the governing statute of limitations. After examining the issue, the court held that the suture was an item placed in the patient with the intention that it would remain to serve a continuing treatment function, i.e., securing the surgical closure, and thus was a “fixation device.” Id. at 566, 601 N.Y.S.2d 86, 618 N.E.2d at 123. See also, LaBarbera v. New York Eye and Ear Infirmary, 230 A.D.2d 303, 657 N.Y.S.2d 664 (1st Dept.1997). Although Rockefeller does not address the expert-testimony issue, it draws a clear distinction between a “foreign object” and a “fixation device.”
In Kenyon v. Miller, 756 So.2d 133 (Fla.App. 3 Dist.2000), the court considered the issue of whether the trial court properly gave the jury a res ipsa loquitur instruction in a surgical mesh case. Dr. Kenyon operated on Ms. Miller | pto repair an inci-sional hernia resulting from a previous hysterectomy. In making the repair, Dr. Kenyon utilized a surgical mesh that was intended to incorporate with the body tissue, adding additional support to the hernia’s closure site. A known complication of the procedure is that the mesh may become infected, not incorporate into the tissue, and require additional surgery to remove the infected mesh. Ms. Miller developed such an infection and Dr. Kenyon performed a second surgery to remove the infected portion of the mesh. Approximately a year later, the infection returned and another doctor performed a third surgery.
Ms. Miller filed a medical malpractice action against Dr. Kenyon, claiming that the doctor’s failure to remove all of the mesh originally placed in her constituted negligence. Conflicting expert testimony was presented at trial as to whether all of the mesh, or just the infected portion, should have been removed by Dr. Kenyon during the second surgery. Despite the conflicting testimony, Ms. Miller’s attorney requested that the court give the jury the res ipsa loquitur charge. Over objection, the court allowed the instruction. As a result, during closing argument, Ms. Miller’s attorney argued that expert testimony was unnecessary because the negligence spoke for itself. The jury was charged accordingly.
The jury returned a verdict in favor of Ms. Miller and, after Dr. Kenyon’s motion for new trial was denied, he appealed.
The court of appeal stated:
Moreover, the provision of section 766.102(4) that discovery of a “foreign body” such as surgical paraphernalia is prima facie evidence of negligence, is clearly inapplicable in a case such as this where the mesh was intentionally placed in Miller’s body as part of her treatment, and like screws, plates, pacemakers, and/or linartificial joints was intended to permanently remain in her body.[2]
Id. at 136-37.
In Pogue v. Goodman, 282 Ga.App. 385, 638 S.E.2d 824 (2006), the court distin *40 guished between a foreign object for purposes of tolling the statute limitations and a fixation device. At issue was a drug delivery catheter that Dr. Goodman had intentionally placed in the plaintiffs spine. The plaintiff alleged that the catheter had been placed improperly. The court interpreted “foreign object” to include only those objects that are inadvertently left within a patient’s body. However, where an object is purposely placed in a body, it cannot said to be “left,” which connotes a non-purposeful act. Id. at 388, 638 S.E.2d at 826 (citing Shannon v. Thornton, 155 Ga.App. 670, 272 S.E.2d 535 (1980)). That Dr. Goodman may have negligently placed the catheter did not turn the medical device into a foreign object.
Finally, in Beckel v. Gerber, 578 N.W.2d 574 (S.D.1998), a distinction was made by the South Dakota Supreme Court between a foreign object and a medical device, for the purposes of the tolling of the statute of limitations relating to medical malpractice claims. Ms. Beckel underwent a hysterectomy during which a metal hemoclip[3] was negligently placed over her ureter, eventually causing her to lulose the use of one of her kidneys. Ms. Beckel sued Dr. Gerber, her surgeon, for malpractice, but her complaint was dismissed on summary judgment after the trial court held that the statute of limitations had run.
On appeal, the Supreme Court stated:
We find the above cases persuasive in defining what constitutes a “foreign object” so as to create a duty to disclose its presence. In Alberts [v. Giebink, 299 N.W.2d 454 (S.D.1980) ], we reversed a grant of summary judgment because there were issues of fact to resolve as to whether the pin was intended to remain in the patient’s knee and whether there was a duty to disclose. We hold that because the hemoclip was intended to remain in Marjorie [Beckel] permanently, it was not a “foreign object” for the purpose of tolling the statute of limitations and, thus, Dr. Gerber was under no duty to inform Marjorie that it was placed in her body.
Id. at 578.
We find the distinctions made between “foreign objects,” ie., only those objects temporarily used in the course of surgery, and “fixation devices,” ie., objects deliberately placed and left in a patient, highly persuasive. In the instant case, the surgical mesh was intended to remain in Ms. Holt permanently, absent infection. Therefore, we find that the mesh was a “fixation device” and not a “foreign body.” In addition, the real issue does not involve the initial placement of the mesh, but whether Dr. Richardson should have removed all the mesh when he removed only the infected material. That is not an issue that a layperson could decide without the aid of a medical expert. Thus, Ms. Holt cannot rely upon Pfiffner v. Correa, supra; she had to present expert testimony in order to defeat Dr. Richardson’s motion for summary judgment, especially in light of the evidence presented to support his motion. As she did not, we find that summary judgment was appropriately granted.
|iaBased on the foregoing, we affirm the judgment of the trial court.

AFFIRMED.

BELSOME, J., concurs.

. We have found several Louisiana cases wherein surgical mesh was used to repair a hernia. See e.g., Post v. State, ex rel. Dept. of Health and Hospitals, 05-0256 (La.App. 4 Cir. 3/8/06), 926 So.2d 48; LeBlanc v. Walsh, 05-0528 (La.App. 5 Cir.2/14/06), 922 So.2d 1248; Welch v. Oakdale Community Hosp., 03-1014 (La.App. 3 Cir. 2/18/04), 866 So.2d 1072. We also note that in Lugenbuhl v. Dowling, 96-1575 (La.10/10/97), 701 So.2d 447, a physi *39 cian was sued for malpractice for his failure to obtain informed consent from the patient to perform a hernia repair without using mesh to close the wound.

. Section 766.102(4). Florida Statutes (1993) provides in pertinent part:
(4) The existence of a medical injury shall not create any inference or presumption of negligence against a health care provider, and the claimant must maintain the burden of proving that an injury was proximately caused by a breach of the prevail *40 ing professional standard of care by the health care provider. However, the discovery of the presence of a foreign body, such as a sponge, clamp, forceps, surgical needle, or other paraphernalia commonly used in surgical, examination or diagnostic procedures, shall be prima facie evidence of negligence on the part of the health care provider.

. Hemoclips are used in a manner and for a purpose similar to stitches and sutures.