**WHOLE COURT**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed. (Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008) http://www.gaappeals.us/rules/

**March 19, 2013**

# In the Court of Appeals of Georgia

A12A2413. NORRED v. TEAVER et al.

BOGGS, Judge.

The sole issue in this case is whether OCGA § 9-3-72, which provides for a one-year statute of limitation for foreign objects "left in a patient's body" applies to only those foreign objects left in the body unintentionally. We hold that it does not, and we overrule our prior precedent limiting the application of the statute.

The underlying facts here are undisputed. In 2005, when Angela Norred chipped a molar, she saw Dr. Steven Teaver, who referred her for a root canal. Following the root canal, Norred returned to see Dr. Teaver who averred that he inserted a cotton pellet and then a temporary crown on Norred's tooth. Dr. Teaver admitted that on March 1, 2006, he placed a permanent crown over Norred's tooth (leaving the cotton pellet in place). Norred's tooth became sensitive late in 2006. She

began seeing a new dentist in 2008, and on February 10, 2010, during a routine cleaning, Norred's crown installed by Dr. Teaver came off, revealing the cotton pellet and releasing a noxious odor due to extensive infection.

Norred filed suit against Dr. Teaver and his professional corporation (collectively "Teaver") on February 4, 2011, alleging that Dr. Teaver was negligent and caused her injury. Norred's expert averred that Norred's injury was caused by Dr. Teaver's failure to insure that the cotton pellet "in the subject molar was removed before [ ] placement of the permanent crown." The expert stated further that the cotton pellet "is a foreign material that is not intended to remain in a molar after placement of a permanent crown," and that Dr. Teaver's failure to remove the material "deviated and fell below the required standard of care."

After the parties engaged in some discovery, Teaver moved for summary judgment on the ground that Norred's claim was filed outside of the general limitation period of OCGA § 9-3-71 (a). Teaver also asserted that OCGA § 9-3-72, the exception to the general limitation period where a foreign object is left in the body, did not apply because the cotton pellet was not a foreign object as contemplated by

2

that Code section since Teaver intentionally left the cotton pellet in Norred's tooth.[1]

Teaver submitted the affidavit of an expert who averred that Dr. Teaver's decision to leave the cotton pellet in place complied with the standard of care.

The trial court granted Teaver's motion for summary judgment finding that because Teaver "intentionally placed a new cotton pellet in [Norred's] tooth based on his professional judgment," the pellet "is not classified as a foreign object." The court concluded that the general statute of limitation for medical malpractice therefore applied, OCGA § 9-3-71 (a), and because Norred filed her complaint outside of the two-year limitation period, her action was barred.

---

[1]Dr. Teaver asserted:

It is normal procedure for me to intentionally place a new cotton pellet underneath a crown if I believe there is a possibility the patient will need a post installed in the tooth at some later date. The purpose of this procedure is to facilitate locating the proper canal for later placement of the post, if it becomes necessary to place a post in the tooth . . . . I believed there was a possibility that Ms. Norred would need to have a post placed in the tooth at some time in the future. In accordance with my common practice, I intentionally placed a new, small cotton pellet under the crown on February 14, 2006 to help locate the proper canal if it became necessary to install a post in the tooth at a later date.

3

1. Norred contends that the trial court erred in holding that OCGA § 9-3-72 does not apply to her action based upon its conclusion that the cotton pellet was not a "foreign object." That Code section provides:

> The limitations of Code Section 9-3-71 [the general limitation for medical malpractice actions] shall not apply where a foreign object has been left in a patient's body, but in such a case an action shall be brought within one year after the negligent or wrongful act or omission is discovered. For the purposes of this Code section, the term "foreign object" shall not include a chemical compound, fixation device, or prosthetic aid or device.

Teaver, citing the authority relied upon by the trial court, *Pogue v. Goodman*, 282 Ga. App. 385 (638 SE2d 824) (2006) and *Shannon v. Thornton*, 155 Ga. App. 670 (272 SE2d 535) (1980), argues that the foreign object statute of limitation does not apply because Dr. Teaver intentionally left the cotton pellet in Norred's tooth and "foreign object" includes only those objects that are inadvertently left in a patient's body. In *Pogue*, supra, a physician implanted a catheter in a patient to distribute pain medication. 282 Ga. App. at 385. The patient filed suit against the physician less than a year after a test revealed that the tip of the catheter reached into the patient's cranial cavity. Id. This court held that because the physician intentionally placed the catheter in the patient's body for the purpose of relieving her pain, it was not a "foreign

4

object," and the patient's claim therefore falls under the general limitation period for medical malpractice actions rather than the limitation period for foreign objects left in the body. Id. at 388 (1). Relying on *Shannon*, we concluded: "We have interpreted the term 'foreign object' to include only those objects that are inadvertently left within a patient's body. Where an object is purposely placed in a body, it cannot be said to have been 'left,' which, in the context of the statute, connotes a non-purposeful act." (Punctuation omitted.) *Pogue*, supra, citing *Shannon*, supra.[2]

Similar to our holdings in *Pogue* and *Shannon*, in *Whiddon v. Spivey*, 194 Ga. App. 587 (391 SE2d 421) (1990), aff'd on other grounds, 260 Ga. 502 (397 SE2d 117) (1990), we concluded that when a washer and screw were inserted in a patient's bone, and the physician removed the screw but *intentionally* left the washer in place, the washer was not a foreign object because the physician made a "conscious decision in the exercise of his professional judgment to leave the washer in plaintiff's leg." *Whiddon*, supra, 194 Ga. App. at 589.

---

[2]This conclusion was not necessary to our analysis in *Shannon*, because in that case, we held that the plaintiff's dental bridge was a "fixation device or prosthetic aid or device" specifically excluded from consideration as a "foreign object," and that the plaintiff's claim was barred in any case by both the general malpractice statute of limitation and the statute of limitation for foreign objects left in the body. Id. at 670.

*Whiddon* relied on this court's opinion in *Ivey v. Scoggins*, 163 Ga. App. 741 (295 SE2d 164) (1982). In *Ivey*, a suture was left in a patient's kidney, and we held that because there was no evidence presented "that the presence of the suture is the result of proper medical procedure, the suture is a foreign object under [OCGA § 9-3-72]." Id. at 742-743 (2). *Whiddon* also relied on the Georgia Supreme Court's decision *Dalbey v. Banks*, 245 Ga. 162 (264 SE2d 4) (1980). But *Dalbey* is distinguishable both factually and legally. The Supreme Court reversed this court's holding in *Banks v. Dalbey*, 150 Ga. App. 779 (258 SE2d 701) (1979), where we held that particles of ceramic glass left in a cut on the patient's hand after a physician attempted to remove the glass, were foreign objects. *Dalbey*, supra, 245 Ga. at 163-164. The Supreme Court held that the physician's failure to remove all of the particles of ceramic glass *which were not placed there by him* was "more akin to the ordinary mis-diagnosis and mis-treatment cases." Id. at 164. While the *Dalbey* court concluded that OCGA § 9-3-72 did not apply because the physician did not place the foreign object in the patient's hand to begin with, the court stated further in dicta:

> Where a physician places a foreign object in his patient's body during treatment, he has actual knowledge of its presence. His failure to remove it goes beyond ordinary negligence so as to be classified by the legislature as a continuing tort which tolls the statute of limitations until

6

the object is discovered. *The purpose of the legislature in making a distinction between the two types of medical malpractice was to allow the plaintiff's claim which does not rest on professional diagnostic judgment or discretion to survive until actual discovery of the wrongdoing.* In such situations the danger of belated, false or frivolous claims is eliminated. The foreign object in the patient's body is directly traceable to the doctor's malfeasance.[3]

(Emphasis supplied.) Id. at 163-164.

While our prior precedent has consistently held that a foreign object left in the body for purposes of OCGA § 9-3-72 applies only to those foreign objects left *unintentionally*, we now hold that such an interpretation of this Code section was incorrect and contrary to the plain language of the statute. It is well-settled that "[w]here the language of a statute is plain and unambiguous, judicial construction is not only unnecessary but forbidden. In the absence of words of limitation, words in a statute should be given their ordinary and everyday meaning." (Citations and punctuation omitted.) *Six Flags Over Georgia II, L.P. v. Kull*, 276 Ga. 210, 211(576 SE2d 880) (2003). OCGA § 9-3-72 provides a one-year limitation period following

---

[3]In *Allrid v. Emory Univ.*, 249 Ga. 35, 38 (1) (d) (285 SE2d 521) (1982), the Supreme Court made a passing reference to this statement as a holding. But a passing reference such as this should not be used to elevate dicta into binding legal precedent.

7

the discovery of "a foreign object" that is "left" in a patient's body." The term "left" is past tense and past participle of the verb "leave" which is defined as "to cause or allow to remain." Webster's Unabridged Dictionary (2nd ed. 1983), p. 1034, 1032. And "foreign" is defined as "not originating in the person or thing specified." Id. at p. 717. It follows then, that under the plain language of OCGA § 9-3-72, the limitation period begins to run upon the discovery of an object not originating in the person's body that is caused or allowed to remain in the body. It is immaterial under the plain meaning of this language whether the object is caused to remain intentionally or unintentionally.

Moreover, "[o]ur well established rules of statutory interpretation require courts to ascertain the legislature's intent in enacting the law in question. OCGA § 1-3-1 (a)." *Inagawa v. Fayette County*, 291 Ga. 715, 717 (1) (732 SE2d 421) (2012). "As long as the (statutory) language is clear and does not lead to an unreasonable or absurd result, 'it is the sole evidence of the ultimate legislative intent.'" (Citations and punctuation omitted.) *Lumpkin County v. Georgia Insurers Insolvency Pool*, 292 Ga. 76, 78 (2) (734 SE2d 880) (2012). In enacting OCGA § 9-3-72, the legislature created a limitation period based upon the *discovery* of a foreign object left in the body. The logic of this exception to the general limitation period is self-evident: because an

8

object left in the body is internal and cannot be seen, a patient may be unaware of the negligent or wrongful act or omission, and likewise unaware that the object has caused injury, until well after the general limitation period of OCGA § 9-3-71 has expired. As the Supreme Court explained in *Spivey*, supra, the "mischief" corrected by the enactment of OCGA § 9-3-72 "was the injustice of a claim being barred before its existence became known to the injured party." (Citation omitted.) 260 Ga. at 504.[4]

The plain language of OCGA § 9-3-72 provides that the general statute of limitation for medical malpractice claims does not apply where a foreign object is left in a patient's body, but that such an action shall be brought within one year after the negligent or wrongful act is discovered.[5] There is no language in this Code section limiting its application to only those foreign objects left inadvertently. And, as argued by Norred, such an interpretation of the statute would allow a defendant-doctor to

[4]We note that in *Spivey*, supra, the Georgia Supreme Court, in affirming this court on other grounds, declined to rule on whether this court correctly decided that the washer was not a foreign object. 260 Ga. at 504 n.1.

[5]As explained in *Abend v. Klaudt*, 243 Ga. App. 271, 272 (1) (531 SE2d 722) (2000), "[b]y requiring in OCGA § 9-3-72 that a patient who claims a foreign object was negligently left in their body must file an action within one year after the negligent act or omission is discovered, the legislature adopted the continuing tort rule announced in *Parker v. Vaughan*, 124 Ga. App. 300, 302 (183 SE2d 605) (1971)."

9

unilaterally bar a plaintiff's claim (that has already fallen outside of the general limitation period) merely by asserting that he left the foreign object in the patient's body intentionally, no matter how absurd the assertion.

Therefore, based upon the plain language and the legislative intent of OCGA § 9-3-72, we overrule both *Shannon* and *Pogue*, as they improperly limit its application. And we disapprove of our prior cases that relied upon dicta in *Dalbey*, supra, to the extent those cases could be interpreted to hold that the foreign object statute of limitation applies to only those foreign objects left in the body unintentionally.[6]

There is no dispute that the cotton pellet is a "foreign" object under the ordinary meaning of the term. Norred's complaint, filed within one year of the discovery of the cotton pellet left in her tooth, was within the limitation period set forth in OCGA § 9-3-72. The trial court therefore erred in granting Teaver's motion for summary judgment.

2. In light of our holding in Division 1, Norred's argument that the trial court erred "by not having a jury determine the veracity of [Dr. Teaver's] testimony that he,

---

[6]See *Abend*, supra, 243 Ga. App. at 275-276 (2) (e); *Karafotias v. Coyne*, 184 Ga. App. 335, 336 (361 SE2d 514) (1987); *Hamrick v. Ray*, 171 Ga. App. 60, 61-62 (1) (318 SE2d 790) (1984).

on occasion, permanently leaves in cotton fabric inside a patient's molars," is rendered moot.

*Judgment reversed. Ellington, C. J., Barnes, P. J., Miller, P. J., Phipps, P. J., Doyle, P. J., Dillard, McFadden, Ray and Branch, JJ., concur.  Andrews, P. J., and McMillian, J., concur specially.*

A12A2413. NORRED v. TEAVER et al.

ANDREWS, Presiding Judge, concurring specially.

I concur specially because although I disagree that the cases interpreting OCGA § 9-3-72 should be overruled, I agree that the trial court erred in granting summary judgment to Dr. Teaver.

"The doctrine of stare decisis is usually interpreted to mean that the court should adhere to what it has previously decided and not disturb what is settled." *Baker v. C & S Nat. Bank*, 240 Ga. 549, 550 (242 SE2d 39) (1978). "Even those who regard 'stare decisis' with something less than enthusiasm recognize that the principle has even greater weight where[, as here,] the precedent relates to interpretation of a statute. A reinterpretation of a statute after the General Assembly's implicit acceptance of the original interpretation would constitute a judicial usurpation of the legislative function." *Abernathy v. City of Albany,* 269 Ga. 88, 90 (495 SE2d 13)

(1998).  Thus, without a strong reason to set aside a long-standing interpretation, we should not do so in the face of legislative acquiescence.  *State v. Jackson,* 287 Ga. 646 (697 SE2d 757) (2010) quoting  *Etkind v. Suarez,* 271 Ga. 352, 358 (5) (519 SE2d 210) (1999).

In this case, there is no strong reason to set aside this long-standing interpretation of OCGA § 9-3-72.  Although the majority posits the scenario that a doctor could simply state that he left the object in the body intentionally and defeat the application of OCGA § 9-3-72, no matter how absurd the assertion, that has not happened to date and is not present in the case before us.  Dr. Teaver and his assistant both stated that it was his practice, in certain cases, to leave a cotton pellet in the tooth to mark the canal in the event that it became necessary to place a post in the tooth. Dr. Teaver has submitted the affidavit of another dentist stating that it is not unusual to leave the cotton pellet in the tooth when placing the crown on the tooth.  Angela Norred's expert testified by way of affidavit that he had never seen, heard, or read about cotton fabric being placed inside a tooth on a permanent basis and therefore doubted the veracity of Dr. Teaver's testimony that he intentionally left the cotton pellet permanently inside Norred's tooth. If a jury were to determine that Dr.

2

Teaver did intentionally place the cotton pellet in Norred's tooth, then, under long-standing case law, the statute of limitation would bar Norred's claim.

Moreover, the interpretation of the statute in *Shannon v. Thornton*, 155 Ga. App. 670 (272 SE2d 535) (1980), is not strained or labored and makes perfect sense. The court pointed out that the one-year statute of limitation applied "only where a foreign object has been *left* in the patient's body." The court reasoned that '[w]here, as here, an object is purposely placed in a body it cannot be said to have been "left," which, in the context of the statute, connotes a non-purposeful act." Id.

Further, our Supreme Court in *Ringewald v. Crawford W. Long Mem. Hosp.*, 258 Ga. 302, 304 (2) (368 SE2d 490) (1988) (overruled on other grounds, *Spivey v. Whiddon,* 260 Ga. 502 (397 SE2d 117) (1990), has approved this interpretation. The Court held that "a bulldog clamp *unintentionally* left in the body following surgery is a 'foreign object'," (emphasis supplied) and cited *Shannon v. Thornton*, as authority. Thus, the Supreme Court has cited with approval and quoted the very language that we are overruling. I believe therefore, that we lack the authority to overrule that holding.

Thus, this interpretation of the statute has been in place for many years and there has been no change in the wording by the legislature nor has our Supreme Court

3

issued any decisions that would seem to disapprove of this interpretation of the statute. See, e.g., *Benefield v. Tominich*, 308 Ga. App. 605, 613 (708 SE2d 563) (2011), Blackwell, J., concurring dubitante. Changing our interpretation of the statute after all this time creates a lack of public confidence in the precedents established by this Court. See *Etkind v. Suarez*, 271 Ga. at 358.

Therefore, for all the reasons stated above, I believe the majority has not shown that there is a strong reason for overruling cases that were correctly decided. The bench and bar are entitled to rely on long-standing case law and this is not a situation in which the doctor's contention is so unbelievable we must overrule cases in order to avoid allowing an "absurd assertion." Nor is there any possibility of this occurring in the future because it will be for a jury to decide any issue of fact as to whether a doctor's assertion that the foreign object was intentionally left in the body is credible.

I am authorized to state that Judge McMillian joins in this opinion.

4