[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-10978
Non-Argument Calendar

_____

D.C. Docket No. 1:16-cv-01948-ODE

GABRIEL FERNANDO NASSAR CURE,
ALAN M. KOZARSKY,
individually and on behalf of others similarly situated,

Plaintiffs-Appellants,

versus

INTUITIVE SURGICAL INC.,
INTUITIVE SURGICAL OPERATIONS, INC.,
JOHN DOES 1-10,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(August 7, 2017)

Before ED CARNES, Chief Judge, MARTIN and ANDERSON, Circuit Judges.

PER CURIAM:

After Gabriel Fernando Nassar Cure and Alan M. Kozarsky underwent heart surgery, small metallic particles were discovered in their brains. They brought suit on behalf of themselves and a putative class, alleging that the particles were metal shavings that had been shed, during surgery, by certain instruments manufactured and sold by Intuitive Surgical Inc. and Intuitive Surgical Operations, Inc. The plaintiffs' amended complaint alleged that as a result of the shavings they "suffered and will continue to suffer physical, neurological, and mental effects." It also alleged that the plaintiffs will have to shoulder "the cost of medical expenses related to care necessary to address those effects" and that the plaintiffs are "also anticipated to lose future wages." The plaintiffs asserted claims under various Georgia law theories of negligence.[1]

The district court granted the defendants' motion to dismiss, ruling that the amended complaint's allegations did not state a claim for negligence under Georgia law. This is the plaintiffs' appeal. "We review de novo the district court's grant of a motion to dismiss under [Federal Rule of Civil Procedure] 12(b)(6) for failure to state a claim, accepting the allegations in the complaint as true and

---

[1] They also asserted claims under several theories of strict liability. But in their initial brief to this Court, they address only the dismissal of their negligence claims. As a result, they have abandoned any argument with respect to the district court's dismissal of their strict liability claims. See Sapuppo v. Allstate Floridian Ins. Co., 739 F.3d 678, 681–82 (11th Cir. 2014) (holding that an appellant abandons an issue when he makes only "passing references" to it).

2

construing them in the light most favorable to the plaintiff." Butler v. Sheriff of Palm Beach Cty., 685 F.3d 1261, 1265 (11th Cir. 2012). The plaintiffs' "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id.

"In Georgia, the essential elements of a cause of action for negligence are: (1) a legal duty; (2) a breach of this duty; (3) an injury; and (4) a causal connection between the breach and the injury." Vaughan v. Glymph, 526 S.E.2d 357, 359 (Ga. Ct. App. 1999). The district court concluded that the plaintiffs had failed to sufficiently plead that they had suffered an injury due to the defendants' alleged negligence. The plaintiffs contend that conclusion is erroneous because the presence of metal shavings in their brain is a legally recognized injury in and of itself.

The plaintiffs' contention runs contrary to Georgia law. In Boyd v. Orkin Exterminating Co., 381 S.E.2d 295 (Ga. Ct. App. 1989), overruled on other grounds by Hanna v. McWilliams, 446 S.E.2d 741 (Ga. Ct. App. 1994), two children, through their parents, claimed that an extermination company had misapplied termiticide in their home. Id. at 297. They presented evidence that the termiticide had caused them to have "significantly elevated levels of heptachlor expoxide." Id. And their expert testified that the presence of that amount of

3

heptachlor expoxide "would require periodic monitoring over the ensuing years to determine whether they were developing any health problems associated with exposure to toxic pesticides." Id.

On that record, the Court of Appeals of Georgia affirmed the trial court's entry of a directed verdict in favor of the extermination company. Id. at 298. It rejected the children's argument that "the presence of elevated levels of [heptachlor expoxide] in [their] blood itself constituted 'injury.'" Id. Instead, the court held that the children had to show that "the presence of [heptachlor expoxide] had caused or would eventually cause actual disease, pain, or impairment of some kind" to support a finding that they suffered an injury. See id. Because they did not do so, they were not entitled to relief. Id.

The plaintiffs argue that the Boyd decision is distinguishable because that case involved toxic chemicals and this case involves "foreign objects" found inside the plaintiffs after surgery. For support they cite Georgia Code § 9-3-72, which provides that the limitations period for a foreign object medical malpractice case begins to run once the "negligent or wrongful act is discovered." O.C.G.A. § 9-3-72 (emphasis added). That rule is an exception to the general medical malpractice limitations period, which begins to run on "the date on which an injury or death arising from a negligent or wrongful act or omission occurred." Id. § 9-3-71 (emphasis added).

4

Providing a distinct limitations period for foreign object cases, as the Georgia Code does, makes sense because a foreign object can often go undiscovered for some time after a medical procedure.  But that logic has nothing to do with the Boyd rule that having an unnatural amount of a certain substance — whether chemical particles or metallic particles — is not an injury in itself.[2]  We see no indication in Georgia law that § 9-3-72 (or anything else) cabins the Boyd holding to cases involving toxic chemicals.  Because the Boyd holding applies, the presence of metal shavings in the plaintiffs' brains does not, under Georgia law, constitute a legally recognizable injury in itself.  See Boyd, 381 S.E.2d at 297.

The plaintiffs contend that they stated a claim for relief even if the Boyd holding applies because the amended complaint also alleged that they "suffered and will continue to suffer physical, neurological, and mental effects."  The problem is that the amended complaint did not contain any allegations more specific than those vague, conclusory statements.  It did not contain, for example, an allegation that the plaintiffs had or will experience any particular symptom as a result of the defendants' purported negligence.  As the Supreme Court has explained, such "naked assertion[s] devoid of further factual enhancement" do not

---

[2] All of the foreign object cases that the plaintiffs cite satisfy the Boyd rule because they all involve an injury beyond the mere presence of the foreign object.  See Norred v. Teaver, 740 S.E.2d 251, 251–52 (Ga. Ct. App. 2013) (cotton pellet caused "extensive infection"); Ivey v. Scoggin, 295 S.E.2d 164, 165 (Ga. Ct. Ap. 1982) (suture necessitated removal of left kidney); Ellis v. Kite, 129 S.E.2d 547, 547 (Ga. Ct. App. 1963) (gauze or sponge caused permanent physical disabilities).

5

"suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quotation marks omitted).

The amended complaint did allege two types of financial harm:  future medical costs and future lost wages.  But those allegations do not add any factual heft to the plaintiffs' claims.  The amended complaint did not say what symptoms or conditions will give rise to the medical costs.  Nor did it say what symptoms will interfere with the plaintiffs' ability to work and cause the plaintiffs to lose wages.  That lack of factual specification about the medical effects of the alleged negligence comes even though information about the plaintiffs' medical situation is uniquely in their possession.

Because the amended complaint did not "contain sufficient factual matter . . . to state a claim to relief," it was properly dismissed.  See id.

**AFFIRMED.**

6