## A09A1611. VALADES et al. v. USLU et al.
## A09A1612. USLU v. VALADES et al.
### (689 SE2d 338)

MIKELL, Judge.

Enedina Janet Armenta ("Dina"), the daughter of plaintiffs Irasema and Armando Valades, called her parents to come to the scene of a traffic stop of her husband, Marco Antonio Armenta ("Armenta"). Fulton County Police Officer George Hodge initiated the traffic stop and fellow officer Hakan Uslu arrived in its midst. The Valadeses became embroiled in a confrontation with Uslu and were charged by Hodge with misdemeanor obstruction of an officer. A jury found them not guilty, and the trial court directed a verdict of acquittal in favor of Mr. Valades.[1] The Valadeses then filed a complaint against Uslu and Fulton County,[2] asserting claims of false arrest, false imprisonment, negligent hiring and retention, malicious prosecution, assault and battery, and intentional infliction of emotional distress. The parties filed cross-motions for summary judg-

---

[1] The Valadeses assert that the trial court directed a verdict in favor of both of them. Although the record only contains an order entered in favor of Mr. Valades, the appellees do not dispute the entry of a directed verdict in favor of both appellants, and we do not address the matter for the purpose of this appeal.

[2] The Valadeses also sued the Fulton County Police Department. The trial court determined that the Department was not an entity capable of being sued, and the Valadeses do not appeal this ruling.

ment. The trial court granted summary judgment to the County on the basis of sovereign immunity and to Uslu as to the claims against him in his official capacity. In Case No. A09A1611, the Valadeses appeal this ruling. The trial court denied summary judgment to Uslu on the claims against him in his individual capacity, and he appeals this ruling in Case No. A09A1612. We conclude that all of the Valadeses' claims, except for the malicious prosecution claim against Uslu, are barred by the statute of limitation, and that the malicious prosecution claim is barred by official immunity. Accordingly, we affirm the judgment in Case No. A09A1611 and reverse the judgment in Case No. A09A1612. As the appeals raise overlapping arguments, we consolidate them for disposition in a single opinion.

To prevail at summary judgment, the moving party must demonstrate that there is no genuine issue of material fact and that the evidence and all reasonable inferences and conclusions drawn therefrom, viewed in the nonmovant's favor, warrant judgment as a matter of law.[3] We review de novo the trial court's ruling on a motion for summary judgment.[4]

Construed most favorably to the Valadeses, the evidence shows that on October 24, 2004, Officer Hodge stopped the Armentas' car because it had an expired tag. After discovering that Armenta was driving without a license, Hodge placed him in custody in the rear of the patrol car. Uslu then arrived on the scene. Dina remained inside the Armentas' car, and Hodge spoke to her while Uslu began questioning Armenta. Hodge advised Dina to call someone with a valid license to take the car so that it would not have to be impounded. Dina called her parents, the Valadeses, and they arrived shortly thereafter.

The situation quickly deteriorated. Mrs. Valades deposed that when she arrived, Uslu was yelling at Armenta that he had been stopped because he did not have a driver's license and was "illegal." The Valadeses both deposed that Armenta was, in fact, "illegal." Mrs. Valades approached Uslu and offered to translate for Armenta because he did not speak English. Uslu said he did not need help and that Armenta would learn English "in a minute." Mrs. Valades began arguing with Uslu and pointed out that he spoke with an accent and probably did not learn English in a minute either.

Uslu then told Mrs. Valades that he was taking her to jail "because he was a police officer and can do whatever he wants." Because she had children at home, Mrs. Valades informed Uslu that she was going to her truck to get her cell phone to tell a relative. Uslu

---

[3] *Latson v. Boaz*, 278 Ga. 113 (598 SE2d 485) (2004).

[4] See id.

told her to "go ahead, do what you want." Mr. Valades deposed that the driver's side door to their truck was open, and when his wife reached in to get her purse, Uslu yelled at her to put it down and pointed a gun at her.

Officer Hodge deposed that when he saw Mrs. Valades reach into the truck, he unholstered his weapon and commanded, "Stop reaching. Let me see your hands." Hodge heard Uslu shout the same command as well as order Mrs. Valades to get down on the ground. Mrs. Valades did not respond immediately; she exited the truck holding her purse and cell phone. Eventually, she dropped her purse. Both officers were pointing their weapons at her.

Mrs. Valades deposed that she threw her purse on the ground as soon as Uslu ordered her to drop it. Uslu then yelled at her, pulled her hair, and threw her on the ground. She fell on her chest, face down. Uslu handcuffed her and pointed his gun at her neck. Hodge observed Uslu forcibly place Mrs. Valades on the ground but did not see Uslu pull her hair or point his weapon at her neck and did not hear Uslu threaten her.

Uslu deposed that Mrs. Valades was confrontational and that he admonished her to stop arguing with him. Uslu admitted drawing his weapon when Mrs. Valades exited her truck with her purse and cell phone, stating that he felt threatened until he saw her hands. She did not drop her purse right away, and Uslu handcuffed her and took her down. He denied pointing a gun at Mrs. Valades's neck but admitted that he grabbed her by the neck and that he might have held her hair in the process.

Mr. Valades, who witnessed his wife's takedown, began walking toward Uslu and asked why he pulled her hair. According to Mr. Valades, both officers aimed guns at him, and Uslu asked three times whether "he wanted to die." The officers deposed that Mr. Valades began charging toward Uslu after he forced Mrs. Valades to the ground. Uslu ordered him to get down on the ground and kicked him in the knee when he did not comply quickly enough. Hodge saw Uslu strike Mr. Valades in the back of the leg and forcibly place him on the ground.

After securing the Valadeses, Uslu placed them both in his patrol car and stated that he was going to let them go once they calmed down. Uslu held them for about 20 minutes until relatives arrived and then released them. Hodge issued them citations for obstruction of an officer.

1. We first address the statute of limitation issue. The incident giving rise to the Valadeses' complaint occurred on October 24, 2004. The jury returned not guilty verdicts on the obstruction charges on September 27, 2006, and the trial court directed a verdict of acquittal the next day. The Valadeses filed their complaint on August 31, 2007,

asserting claims of false arrest, false imprisonment, negligent hiring and retention, malicious prosecution, assault and battery, and intentional infliction of emotional distress. The applicable statute of limitation, OCGA § 9-3-33, provides, in pertinent part, that "[a]ctions for injuries to the person shall be brought within two years after the right of action accrues." All of the Valadeses' claims except for malicious prosecution, discussed infra, accrued on the date of the incident.[5] As such, the claims are time-barred.

The Valadeses counter that the limitation period is tolled by OCGA § 9-3-99, which provides:

> The running of the period of limitations with respect to any cause of action in tort that may be brought by the victim of an alleged crime which arises out of the facts and circumstances relating to the commission of such alleged crime committed in this state shall be tolled from the date of the commission of the alleged crime or the act giving rise to such action in tort until the prosecution of such crime or act has become final or otherwise terminated, provided that such time does not exceed six years.

The Valadeses interpret this statute as tolling the running of the two-year limitation period because it mentions tolling from the date of "the commission of . . . the act giving rise to such action in tort until the . . . act has become final. . . ." This interpretation ignores our rules of statutory construction.

> The fundamental rules of statutory construction require us to construe a statute according to its terms, to give words their plain and ordinary meaning, and to avoid a construction that makes some language mere surplusage. At the same time, we must seek to effectuate the intent of the legislature.[6]

The legislature enacted OCGA § 9-3-99 as part of the Crime Victims Restitution Act of 2005.[7] The statute's plain language tolls the

---

[5] See, e.g., *Alpharetta First United Methodist Church v. Stewart*, 221 Ga. App. 748, 751 (1) (472 SE2d 532) (1996) (claims of negligent hiring and retention, battery, intentional infliction of emotional distress, false imprisonment, and assault held time-barred); *Reese v. Clayton County*, 185 Ga. App. 207, 208 (363 SE2d 618) (1987) (action for false imprisonment accrues on date of release from custody).

[6] (Citation and punctuation omitted.) *Beneke v. Parker*, 285 Ga. 733 (684 SE2d 243) (2009) (holding that "crime," as used in OCGA § 9-3-99, applies to misdemeanors, including traffic offenses, as well as felonies).

[7] Ga. L. 2005, pp. 88-89, §§ 1, 2.

statute of limitation for any cause of action in tort brought "by the victim of an alleged crime" while the prosecution of the *defendant* is pending, for a period not to exceed six years. Uslu was not prosecuted for any crime arising out of this incident. Therefore, OCGA § 9-3-99 does not toll the two-year statute of limitation, and the claims of false arrest, false imprisonment, battery, assault and intentional infliction of emotional distress are time-barred because they were filed more than two years after they accrued.

The malicious prosecution claim, however, is not time-barred. "The criminal prosecution forming the basis for an action for malicious prosecution must be ended before the right of action for malicious prosecution accrues."[8] This means that a malicious prosecution action "must be brought within [two] years after the underlying criminal prosecution terminated in [the] plaintiff's favor."[9] Thus, the claim did not accrue until September 27, 2006, the date that the Valadeses were acquitted of the obstruction charges. As the complaint was filed on August 31, 2007, the malicious prosecution claim was timely.

Uslu's reliance on *Daniel v. Ga. R. Bank & Trust Co.*[10] for the proposition that the statute of limitation on a malicious prosecution claim begins running at the time of the plaintiff's arrest is unavailing. In *Daniel*, the Supreme Court, while expressly declining to decide whether a defendant may be liable for negligently causing the arrest of another, assumed that if such a cause of action exists, the statute of limitation begins running at the time of arrest.[11] The Valadeses do not assert that Uslu negligently caused their arrest; they sued him for committing an intentional tort. The Court clearly held in *Daniel* that the statute of limitation on malicious prosecution claims begins running upon the termination of the criminal prosecution in the plaintiff's favor.[12] Accordingly, the Valadeses' malicious prosecution claim is not time-barred.

2. Uslu contends, however, that he is entitled to qualified immunity on the Valadeses' malicious prosecution claim. We agree.

Malice is an essential element of a malicious prosecution claim.[13]

---

[8] OCGA § 51-7-41. See *Ayala v. Sherrer*, 234 Ga. 112, 113 (214 SE2d 548) (1975) (this statute "requires that the criminal prosecution must have terminated, favorably to the person prosecuted, before the right of action for malicious prosecution accrues").

[9] (Citation omitted.) *Banta v. Quik-Thrift Food Stores*, 187 Ga. App. 250, 251 (2) (370 SE2d 3) (1988).

[10] 255 Ga. 29 (334 SE2d 659) (1985).

[11] Id. at 31.

[12] Id.

[13] See *Wal-Mart Stores v. Blackford*, 264 Ga. 612, 613 (449 SE2d 293) (1994) (the elements essential to a malicious prosecution claim pursuant to OCGA § 51-7-40 are: "(1) prosecution for a criminal offense; (2) instigated without probable cause; (3) with malice; (4)

Moreover, under Georgia law, a public officer may be personally liable only for ministerial acts negligently performed or for discretionary acts performed with malice or an intent to injure.[14] And arresting a person for conduct occurring in an officer's presence "is a discretionary act that will not give rise to personal liability unless the officer acted with actual malice or actual intent to cause injury."[15]

The Code defines malice as consisting "in personal spite or in a general disregard of the right consideration of mankind, directed by chance against the individual injured."[16] *Selvy v. Morrison*[17] is strikingly similar to the case at bar and instructive on the element of malice in the context of qualified immunity. In *Selvy*, the plaintiff alleged that she was brutally treated when falsely arrested for disorderly conduct. Police officers had come to her home to arrest her fiancé. After they had done so, she demanded that they leave her house. She used profanity. The officers left and Selvy shut and locked the door. But then one of the officers yelled, "Fuck this shit, arrest that bitch too!" The officer began banging on the door, demanding she open it and threatening to break it down if she refused. When she opened the door, one of the officers grabbed her arm, twisted it behind her back and slammed her face into the wall. Another officer kicked her legs out from under her and, in the process, kicked her ten-year-old son in the mouth, causing him to bleed. Another officer then said to Selvy, "[L]ook what you did to your kid, you stupid bitch."[18]

In affirming the trial court's grant of summary judgment to the officers, we rejected Selvy's claim that the officers acted with actual malice. We held that

> [i]n the context of official immunity, actual malice requires a deliberate intention to do wrong and denotes express malice or malice in fact. Actual malice does not include implied malice, or the reckless disregard for the rights and safety of others. A deliberate intention to do wrong such as to constitute the actual malice necessary to overcome official immunity must be the intent to cause the harm suffered

---

under a valid warrant, accusation or summons; (5) which has terminated favorably to the plaintiff; and (6) has caused damage to the plaintiff") (citation omitted).

[14] See *Cameron v. Lang*, 274 Ga. 122, 123 (1) (549 SE2d 341) (2001) (doctrine of official immunity, also known as qualified immunity, offers public officers and employees limited protection from suit in their personal capacity).

[15] *Selvy v. Morrison*, 292 Ga. App. 702, 704 (665 SE2d 401) (2008), citing *Delong v. Domenici*, 271 Ga. App. 757, 758-759 (1) (610 SE2d 695) (2005).

[16] OCGA § 51-7-2.

[17] Supra.

[18] Id. at 702-703.

> by the plaintiffs. Likewise, the phrase "actual intent to cause injury" has been defined in a tort context to mean an actual intent to cause harm to the plaintiff, not merely an intent to do the act purportedly resulting in the claimed injury. This definition of intent contains aspects of malice, perhaps a wicked or evil motive.[19]

We concluded that "[e]vidence demonstrating frustration, irritation, and possibly even anger is not sufficient to penetrate official immunity, nor is proof of ill will, unless the ill will is combined with the intent to do something wrongful or illegal."[20]

Similar circumstances in *Tittle v. Corso*[21] led to the conclusion that an officer's threats, use of profanity, and act of slamming a motorist against his vehicle were insufficient to establish actual malice.[22] The motorist's vehicle had backfired several times, and the officer believed the noises he heard were gunshots. The motorist tried to explain that he was having car trouble, but the officer said, "Shut up. I'm in control."[23] The officer walked the motorist over to the patrol car, slammed him down on the hood and said, "If you fucking move, I'll put my dog on you, and he'll eat you up." The officer also threatened to blow the motorist's head off if he "fucking moved."[24]

*Selvy* and *Tittle* are apposite on the issue of malice. Even construed most favorably to the Valadeses, the evidence shows that Mrs. Valades approached Uslu and began arguing with him while he was speaking to a suspect in custody. Although Uslu told her to "do what you want," Uslu deposed that he did not know that she was going back to her truck. When she reached into her truck to retrieve her purse, he was concerned for his safety. For the purpose of summary judgment, we assume, as we must, that Uslu pulled Mrs. Valades's hair, pointed a weapon at her neck, and lifted her up while she was handcuffed, causing soreness in her shoulder. We also assume that, when Mr. Valades approached Uslu, he asked whether Mr. Valades "wanted to die." Finally, we assume that Uslu kicked Mr. Valades and caused a scratch on his back in the process of taking him down. We by no means condone these actions. But they do not rise to the level of actual malice.

"[P]olice officers are often forced to make split-second judg-

---

[19] (Punctuation and footnotes omitted.) Id. at 704-705.

[20] (Punctuation and footnotes omitted.) Id. at 706.

[21] 256 Ga. App. 859 (569 SE2d 873) (2002) (whole court).

[22] Id. at 863 (1).

[23] (Punctuation omitted.) Id. at 860.

[24] (Punctuation omitted.) Id. at 861.

ments — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation."[25] We do not judge, in hindsight, what Uslu should have done under the circumstances. Instead, we decide whether he displayed a deliberate intent to commit a wrongful act, or a wicked or evil motive. Given this standard, we cannot conclude that Uslu's actions showed malice rather than an effort to restrain the Valadeses and control an uncertain situation. The officers testified that their goal was to maintain control of the situation and ensure officer safety. For these reasons, the trial court erred in denying Uslu's motion for summary judgment on the basis of official immunity.[26]

*Gardner v. Rogers*,[27] cited by the Valadeses, is distinguishable. There was evidence in that case that the arresting officer, after allegedly using excessive force to take the plaintiff into custody, thereafter took her to a school parking lot, where he schemed with a colleague to manufacture charges against her.[28] We held that this evidence created a jury question on whether the officer exhibited actual malice toward the plaintiff.[29] By contrast in the case at bar, Uslu released the Valadeses at the scene and did not make the decision to charge them with obstruction.

*Judgment affirmed in Case No. A09A1611. Judgment reversed in Case No. A09A1612. Johnson, P. J., and Ellington, J., concur.*

DECIDED DECEMBER 3, 2009 —
RECONSIDERATION DENIED JANUARY 8, 2010 —

*William H. Arroyo*, for Valades et al.
*Coy J. Johnson, Jr., Steven E. Rosenberg, Matthew C. Welch*, for Uslu et al.

---

[25] Id. at 863 (1), n. 7, citing *Graham v. Connor*, 490 U. S. 386, 396-397 (109 SC 1865, 104 LE2d 443) (1989).
[26] See *Selvy*, supra; *Tittle*, supra.
[27] 224 Ga. App. 165 (480 SE2d 217) (1996).
[28] Id. at 166-167.
[29] Id. at 169 (4).