**WHOLE COURT**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**July 7, 2016**

# In the Court of Appeals of Georgia

A16A0648. HARRISON v. MCAFEE et al.                    PE-026

PETERSON, Judge.

It is often said that "nothing good happens after midnight." *See, e.g., MacFall v. City of Rochester*, 746 F. Supp. 2d 474, 477 (W.D.N.Y. 2010). As further support for this proposition, it was well after midnight when a masked man burst into the Shamrock bar and shot John Harrison in the arm. The masked man was never found. More than two years later, Harrison filed a premises liability lawsuit against the bar's alleged owners, which the trial court dismissed as time-barred by the two-year statute of limitations applicable to personal injury claims. Harrison argues that his lawsuit is timely under OCGA § 9-3-99, which tolls the limitations period for claims filed by crime victims, and that we should overrule our precedent that interprets that statute as applying only to claims filed against the alleged perpetrator. Because our prior

decisions misinterpreted the statute, we agree, overrule our prior decisions, and reverse.

1.    FACTUAL AND PROCEDURAL OVERVIEW

The pertinent evidence is undisputed. Harrison was shot in the arm on June 16, 2011, while patronizing a Macon area restaurant and bar named the Shamrock. As far as the parties know, the shooter, who was part of a group of masked men apparently attempting to rob the bar, has yet to be arrested or prosecuted. On August 14, 2013, Harrison filed a lawsuit against Dargan McAfee, alleging that McAfee owned and operated the bar at the time of the shooting and had been negligent in maintaining the premises. In his answer, McAfee raised as affirmative defenses (1) Harrison's failure to join as a party Twisted Shamrock, Inc., a corporation McAfee formed to own the bar, and (2) the complaint was time-barred by OCGA § 9-3-33's two-year statute of limitations for personal injury cases. McAfee also filed a motion to dismiss on the basis that Harrison's claim was time-barred, but withdrew the motion after Harrison amended his complaint to allege tolling under OCGA § 9-3-99 based on his status as a crime victim. With permission of the trial court, Harrison filed a second amended complaint adding Twisted Shamrock as a defendant.

The defendants moved for summary judgment on the ground that Harrison's claims were time-barred. In response, Harrison argued that his suit was filed within the time period permitted under OCGA § 9-3-99 for torts arising from a crime. He argued that this Court's decisions holding that OCGA § 9-3-99 applies only to crime victims' suits against the alleged perpetrators were wrongly decided. Alternatively, Harrison argued that a different provision, OCGA § 9-3-94, tolled the limitations period as to his claim against Twisted Shamrock, because the company's administrative dissolution several years prior to the shooting had rendered the entity effectively absent from the state. The trial court rejected both arguments and granted summary judgment for the defendants. Harrison appeals the trial court's rulings on both OCGA § 9-3-94 and OCGA § 9-3-99, explicitly urging us to overrule our precedent that restricts the application of OCGA § 9-3-99 to suits against alleged perpetrators.

2.    ANALYSIS

Whether a cause of action is barred by the statute of limitations generally is a mixed question of law and fact, but the question is one of law for the court when the facts are not disputed. *McGhee v. Jones*, 287 Ga. App. 345, 347 (2) (652 SE2d 163) (2007). The plaintiff bears the burden of establishing that a statute of limitations has

3

been tolled. *Orr v. River Edge Cmty. Serv. Bd.*, 331 Ga. App. 228, 230 (1) (770 SE2d 308) (2015). With certain exceptions, "actions for injuries to the person shall be brought within two years after the right of action accrues[.]" OCGA § 9-3-33. That limitations period may be tolled for actions by crime victims under OCGA § 9-3-99, enacted by the General Assembly as part of the "Crime Victims Restitution Act of 2005." Ga. L. 2005, pp. 88-89, §§ 1, 2. The statute provides in full:

> The running of the period of limitations with respect to any cause of action in tort that may be brought by the victim of an alleged crime which arises out of the facts and circumstances relating to the commission of such alleged crime committed in this state shall be tolled from the date of the commission of the alleged crime or the act giving rise to such action in tort until the prosecution of such crime or act has become final or otherwise terminated, provided that such time does not exceed six years, except as otherwise provided in Code Section 9-3-33.1.[1]

OCGA § 9-3-99.

*a.      Our treatment of OCGA § 9-3-99 to date*

---

[1] The sole change to the statute since its 2005 enactment was made in 2015, when the Legislature added the phrase "except as otherwise provided in Code Section 9-3-33.1," in an act creating that new Code section, which extended the limitations period for lawsuits over childhood sexual abuse. *See* Ga. L. 2015, p. 675, § 2-4; Ga. L. 2015, p. 689, § 4.

4

The Georgia Supreme Court has not addressed whether OCGA § 9-3-99 applies to lawsuits against those who have not been accused of crimes against the plaintiff.[2] Beginning with passing dicta and evolving to explicit holdings, our Court has said that this tolling statute applies only to a crime victim's claims against someone accused of committing the crime that forms the basis for the suit:

- In 2007, we described OCGA § 9-3-99 in a string cite as "tolling due to pending criminal prosecution of defendant." *DeKalb Med. Ctr. v. Hawkins*, 288 Ga. App. 840, 847 (2) (c) n.6 (655 SE2d 823) (2007). The plaintiff in that case did not claim crime victim status or cite OCGA § 9-3-99 as a basis for tolling in his lawsuit, however, *see id.* at 840-43, and the reference clearly was dicta.

- In *Valades v. Uslu*, 301 Ga. App. 885, 888-89 (1) (689 SE2d 338) (2009), we rejected the plaintiffs' argument that OCGA § 9-3-99 tolled the time for filing their false arrest and other claims against a county and one of its police officers. We explained that "[t]he statute's plain language tolls the statute of limitation for any cause of action in tort brought 'by the victim of an alleged

---

[2] The lone Georgia Supreme Court decision discussing OCGA § 9-3-99, *Beneke v. Parker*, 285 Ga. 733 (684 SE2d 243) (2009), concerned the interpretation of the term "crime" as it is used in the statute, holding that the term encompassed a violation of the Uniform Rules of the Road and was not limited to felonies or specific intent crimes.

5

crime' while the prosecution of the *defendant* is pending, for a period not to exceed six years." *Id.* (emphasis in original). Because the defendant officer had not been prosecuted for any crime based on the incident in question, we held that OCGA § 9-3-99 did not toll the limitations period. *Id.* at 889 (1). Our opinion did not make clear on what basis the plaintiffs took the position that they were "victims" within the meaning of the statute, but the prosecution of the plaintiffs (for obstruction of an officer, resulting in acquittals) was the only prosecution mentioned therein. *Id.* at 887 (1). We also did not identify any language of the statute, plain or otherwise, that limited its scope to claims against a prosecuted defendant.

- The following year, we followed *Valades* in rejecting a plaintiff's argument that OCGA § 9-3-99 tolled the time for filing an ante litem notice regarding his lawsuit against a county and its sheriff. *Columbia Cty. v. Branton*, 304 Ga. App. 149, 152-53 (1) (695 SE2d 674) (2010). The plaintiff sued the county and sheriff over the death of his wife, killed by a motorist who was then prosecuted for felony murder based on the motorist's felony attempt to elude a sheriff's deputy. *Id.* at 159-51. The plaintiff's suit apparently was based on evidence that the deputy had pursued the motorist at a high rate of speed. *Id.* at 150. We

6

quoted *Valades* and held that "[b]ecause the county defendants were not criminal defendants in a prior prosecution, OCGA § 9-3-99 does not toll the time for filing the ante litem notice[.]" *Id.* at 152-53 (1).

- In *Mays v. Target Corp.*, 322 Ga. App. 44 (743 SE2d 603) (2013), we rejected as non-binding dicta statements in *Valades* about the plain language of OCGA § 9-3-99. *Id.* at 46 n.2. We nevertheless reaffirmed that OCGA § 9-3-99 tolls the limitations period only for suits brought against persons accused of crimes of which the plaintiff is a victim. *Id.* at 46. The plaintiff had alleged in her lawsuit against a retailer that the defendant's employee had pleaded guilty to a criminal offense after he captured her image with a cell phone while she was changing in a store dressing room. *Id.* at 44. Finding the statute was "ambiguous as to whether it tolls the limitations period for a crime victim's cause of action against the person accused of the crime only," we relied on language in the caption of the enacting legislation that said a purpose of the legislation was to "provide for a statute of repose in certain tort actions brought by victims of crimes *against the person accused of such crimes*." *Id.* at 46 (emphasis in original) (*quoting* Ga. L. 2005, pp. 88-89, § 1).

7

• Last year, without further analysis of the statutory text, we relied on *Mays*, *Branton*, and *Valades* to reject a plaintiff's tolling argument under OCGA § 9-3-99, reaffirming that tolling under the statute "is only available in suits against criminal defendants." *Orr*, 331 Ga. App. at 230-31 (1).

b.    *Reexamination of plain language of OCGA § 9-3-99*

Although our prior precedent has held consistently that OCGA § 9-3-99 applies only to actions brought by crime victims against persons accused of such crimes, we now hold that such an interpretation is contrary to the plain language of the statute.

> When we consider the meaning of a statute, we must presume that the General Assembly meant what it said and said what it meant. To that end, we must afford the statutory text its plain and ordinary meaning, we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would.

*Deal v. Coleman*, 294 Ga. 170, 172-73 (1) (a) (751 SE2d 337) (2013) (citations and punctuation omitted). "It is well settled that where the language of a statute is plain and unambiguous, judicial construction is not only unnecessary but forbidden." *Norred v. Teaver*, 320 Ga. App. 508, 512 (1) (740 SE2d 251) (2013) (citation and punctuation omitted).

8

OCGA § 9-3-99 provides for tolling as to "any cause of action in tort" brought by a crime victim that "arises out of the facts and circumstances relating to the commission of such alleged crime." In its ordinary usage, "any" refers to "one or some indiscriminately of whatever kind," "one, some, or all indiscriminately of whatever quantity," and "unmeasured or unlimited in amount, number or extent."[3] Webster's New Collegiate Dictionary 93 (9th ed. 1991). So the statute applies to any cause of action in tort, without limitation, so long as that cause of action is brought by a crime victim and "arises out of the facts and circumstances relating to the commission of such alleged crime."

We have previously construed "arising out of" to mean "had its origins in," "grew out of," or "flowed from." *BBL-McCarthy, LLC v. Baldwin Paving Co.*, 285 Ga. App. 494, 498 (1) (646 SE2d 682) (2007). "Moreover, we have also held that the term 'arising out of' does not mean proximate cause in the strict legal sense . . . . Almost any causal connection or relationship will do." *Id.* (citations omitted). In determining whether an injury occurs by an accident "arising out of" a person's employment for purposes of worker's compensation law, we consider whether the

---

[3] The use of the word "any" can create some ambiguity only when it is unclear whether it means "all" or "any one" of something. *See, e.g.*, *Morrison v. Claborn*, 294 Ga. App. 508, 511-12 (2) (669 SE2d 492) (2008). There is no such ambiguity here.

injury would have occurred "but for the fact that the conditions and obligations of the employment placed claimant in the position where he was injured." *Sturgess v. OA Logistics Servs., Inc.*, No. A15A2139, 2016 Ga. App. LEXIS 136, 8 (1), 2016 WL 952509, 3 (Ga. Ct. App. March 10, 2016) (*quoting Chaparral Boats, Inc. v. Heath*, 269 Ga. App. 339, 343 (1) (606 SE2d 567) (2004)) (emphasis omitted). Similarly, in determining whether insurance claims "arise out of" excluded conduct, we also conduct a "but for" analysis. *See Continental Cas. Co. v. H.S.I. Finan. Svs., Inc.*, 266 Ga. 260, 262 (466 SE2d 4) (1996); *City of College Park v. Ga. Interlocal Risk Mgmt. Agency*, 313 Ga. App. 239, 243-45 (2) (721 SE2d 97) (2011).

If we presume — as we must — that the General Assembly meant what it said and said what it meant, we must conclude that the tolling provision applies here. Harrison is the victim of an alleged crime committed in this state. He has filed a lawsuit containing a cause of action in tort. And his cause of action in tort arises out of the facts and circumstances relating to the commission of the alleged crime; but for the crime, there would be no cause of action. "[A]ny cause of action in tort" that "arises out of the facts and circumstances relating to the commission of such alleged crime" means precisely that; there is no qualifying or limiting language that narrows the scope of the statute based on the identity of the civil defendant.

10

In *Mays*, we said the language of OCGA § 9-3-99 was ambiguous. 322 Ga. App. at 46. But it is not. That the statute does not identify the particular civil defendants against whom it applies does not make it ambiguous, it makes it unlimited. The General Assembly knows how to limit the sort of civil defendants to which a statute applies, when it wishes to do so. *See, e.g.,* OCGA §§ 2-7-170(d); 7-1-440; 8-2-117; 9-3-30.2(b); 10-1-623(f); 10-1-814(b). But it did not do so here, leading us to conclude that it did not intend to limit the statute's reach to claims against only a certain subset of civil defendants. *See Gay v. Owens*, 292 Ga. 480, 481-82 (1) (738 SE2d 614) (2013) (when General Assembly uses a phrase in other statutes, courts do not read that phrase into a statute that does not contain it). This case is similar to *Norred*, in which we overruled prior precedent to hold that OCGA § 9-3-72, which tolls the limitations period for medical malpractice case "where a foreign object has been left in a patient's body," is not limited to cases in which the object is left unintentionally. 320 Ga. App. at 510-13 (1). As in that case, the plain language of OCGA § 9-3-99 is clear and "[t]here is no language in this Code section limiting its application" to cases in which the party sued has been criminally accused. *Id.* at 512-13 (1).

McAfee and Twisted Shamrock urge us to adhere to *Mays'* reliance on the caption of the bill that enacted OCGA § 9-3-99 as evidence that the Legislature intended for the tolling provision to apply to causes of action against only those accused of a crime. We may examine the title or caption of an act of the General Assembly "when the act is doubtful, for the purpose of finding the legislative intent thereof[.]" *Moore v. Robinson*, 206 Ga. 27, 40 (6) (55 SE2d 711) (1949). However, as we recognized in *Mays*, the caption "is not a part of the act and therefore cannot control over its plain meaning." 322 Ga. App. at 46 (*quoting Spalding County Bd. of Elections v. McCord*, 287 Ga. 835, 837 (1) (B) (700 SE2d 558) (2010)). *See also State v. Ware*, 282 Ga. 676, 678 (653 SE2d 21) (2007) ("[I]t is fundamental that the preamble or caption of an act is no part thereof and cannot control the plain meaning of the body of the act."). The meaning of OCGA § 9-3-99 is plain and thus cannot be informed or changed by the caption of the enacting legislation.

The cases cited by McAfee and Twisted Shamrock to the contrary are distinguishable. In *Moore*, our Supreme Court explicitly found the statute in question to be ambiguous before considering the caption of the act. *Moore*, 206 Ga. at 39 (6). In *Concerned Citizens of Willacoochee v. City of Willacooche*, 285 Ga. 625, 626 (680 SE2d 846) (2009) the Court did not use the preamble to change the plain meaning of

12

the statute, but announced its conclusion based on a plain reading of the charter and amendment before adding that its conclusion was "buttressed" by the preamble.[4] In *Holcomb v. Long*, 329 Ga. App. 515, 518-19 (1) (765 SE2d 687) (2014), this Court examined a codified preamble in determining the intent of the General Assembly, which is different from the sort of caption relied on by the defendants here. *See id.* at 518-19 (1) (examining OCGA § 4-12-1). Unlike captions, codified preambles *are* part of the act and appropriate to read in pari materia.[5] *See Holcomb*, 329 Ga. App. at 518-19 (1) n.15 (codified preamble was "part of an act passed by the General Assembly and approved by the governor"); *cf. Gay*, 292 Ga. at 482 (1) ("Statutes are not to be construed in a vacuum, but in relation to other statutes of which they are a part.") (citation and punctuation omitted).

---

[4] Moreover, *Concerned Citizens* involved the interpretation of a city charter and an amendment thereto, and thus the Court was not bound by its rules of construction as to enactments of the Georgia General Assembly. *See Concerned Citizens*, 285 Ga. at 625.

[5] When the General Assembly codifies its intent for a comprehensive statutory scheme, that codified preamble becomes part of the statutory context in which we read individual passages. This is quite different from the uncodified, formalistic caption that accompanies every bill the General Assembly considers, which both we and our Supreme Court have made clear is *not* part of the act. *See Ware*, 282 Ga. at 678; *Mays*, 322 Ga. App. at 46. It is the latter kind of caption that *Mays* incorrectly relied upon to change the plain language of the statute.

McAfee and Twisted Shamrock also argue that limiting the tolling provision to actions against those accused of crimes "makes practical sense." But our decision does not rest on the relative policy merits of one construction over another. When statutory language is clear, "it is the sole evidence of the ultimate legislative intent." *Norred*, 320 Ga. App. at 512 (1) (citation and punctuation omitted). The plain language of OCGA § 9-3-99 clearly applies regardless of a crime victim's choice of civil defendant.[6]

c.      *Stare decisis considerations*

Having concluded that our prior interpretations of OCGA § 9-3-99 misread the plain language of the statute, we must consider whether the doctrine of stare decisis nonetheless counsels us to adhere to those prior decisions. "Stare decisis is an important principle that promotes the rule of law, particularly in the context of statutory interpretation, where our incorrect decisions are more easily corrected by

---

[6] Moreover, there are conceivable policy arguments cutting the other way. As Harrison points out, records related to a pending investigation or prosecution may be relevant to the victim's civil claim against someone other than the perpetrator of the crime. But those records may be unavailable to a crime victim until that investigation or prosecution is complete. *See* OCGA § 50-18-72(a)(4) (excluding from Open Records Act disclosure requirements law enforcement records of pending investigations and prosecutions). Some might also wish to afford crime victims generally some breathing room before they need to contemplate a civil lawsuit.

14

the democratic process." *State v. Jackson*, 287 Ga. 646, 658 (5) (697 SE2d 757) (2010) (citation omitted). However, it "is not an inexorable command" but "a principle of policy." *Id.* (citation and punctuation omitted). "In considering whether to reexamine a prior erroneous holding, we must balance the importance of having the question *decided* against the importance of having it *decided right*." *Id.* (emphasis in original). Factors to consider include (1) the age of the precedent, (2) the reliance interests at stake, (3) the workability of the decision, and, most importantly, (4) the soundness of its reasoning. *Id.*

As demonstrated above, the reasoning of our prior decisions on this question is unsound, which weighs strongly in favor of overturning them. Our rulings at issue here are relatively young: It was less than seven years ago, in *Valades*, that we first held that OCGA § 9-3-99 applies only to a claim against someone accused of a crime against the plaintiff. We and our Supreme Court have overruled erroneous statutory interpretations far older than that. *See Woodard v. State*, 296 Ga. 803, 808-14 (3) (771 SE2d 362) (2015) (overruling 24-year-old interpretation of justification defense statute); *Jackson*, 287 Ga. at 659-60 (5) & (6) (overruling nearly 29-year-old interpretation of felony murder statute); *Durrence v. State*, 287 Ga. 213, 216 n.5 (695 SE2d 227) (2010) (overruling 26-year-old interpretation of insanity defense statute);

15

*Giles v. State Farm Mut. Ins. Co.*, 330 Ga. App. 314, 319-21 (2) (765 SE2d 413) (2014) (overruling 36 years of erroneous calculation of statutory grace period for perfecting service). Our prior interpretation of OCGA § 9-3-99 affects no property or contract issues and establishes no substantive rights, so it does not create the sort of reliance interests that counsel against overturning precedent. *Jackson*, 287 Ga. at 658-59 (5). Additionally, our case law is inconsistent as to whether it limits the statute to claims against those who have been accused of committing the crime from which the cause of action arises, or limits the statute to claims against those who actually have been prosecuted. *Compare Mays*, 322 Ga. App. at 46 (limiting tolling to claims against those "accused" of a crime of which the plaintiff was a victim); *with Orr*, 331 Ga. App. at 230 (limiting tolling to claims against "criminal defendants"); *Branton*, 304 Ga. App. at 153 (same); *and Valades*, 301 Ga. App. at 889 (limiting tolling to claims against those who have been "prosecuted"). That lack of clarity alone creates some workability concerns.

That leaves nothing on the side of reaffirming our prior case law, except the fact that it involved the construction of a statute. Although certainly the Georgia General Assembly can correct an erroneous statutory interpretation more easily than it can respond to an constitutional ruling of which it disapproves, we minimize the

16

complexities of the legislative process if we assume that legislative inaction in the face of a court's erroneous construction of a statute amounts to agreement. Indeed, "it can be perilous to rely heavily on legislative silence and inaction to conclude that a court's interpretation of a statute is correct." *Jackson*, 287 Ga. at 659 (5) n.8. "Legislative inaction frequently betokens unawareness, preoccupation, or paralysis." *Id.* (punctuation and citation omitted). In fact, because our prior error involved an incorrect interpretation of a statute enacted by a co-equal branch of government, rather than, say, our own pronouncement on matters of judge-made law, separation of powers considerations counsel in favor of reaching the correct decision, even if it means reversing course, lest we fail to apply faithfully the law as enacted by the legislative branch. *Cf. Etkind v. Suarez*, 271 Ga. 352, 357 (5) (519 SE2d 210) (1999) (rejecting request to overrule prior decision, noting that prior ruling "is not an erroneous statement of the law in Georgia, but merely a pronouncement by a majority of [the state Supreme] Court as to the proper construction of the tort law of this state as a matter of first impression"). We conclude that stare decisis does not warrant holding firm to our prior erroneous construction of OCGA § 9-3-99.

3.    CONCLUSION

Based on the plain language of OCGA § 9-3-99, we hold that the statute applies regardless of whether the defendant in the case has been accused of committing the crime from which the cause of action arises. We, therefore, overrule *Valades*, *Branton*, *Mays*, and *Orr* to the extent that they improperly limit the statute's application. We also disapprove dicta in *DeKalb Medical Center* that is inconsistent with the holding of this opinion.

As our Supreme Court did when it construed another aspect of OCGA § 9-3-99, "we recognize that our holding in this case will have a significant impact on personal injury actions" by crime victims. *Beneke*, 285 Ga. at 735.

> Nonetheless, we are constrained by the language of the statute to reach this result. If the Legislature had intended to limit the application of OCGA § 9-3-99 to [claims against those accused of committing a crime of which the plaintiff was a victim], it certainly could have done so. It did not, and any undesirable result is a matter properly addressed by the General Assembly rather than the courts.

*Id.*

18

McAfee and Twisted Shamrock have not challenged Harrison's invocation of OCGA § 9-3-99 on any ground other than reliance on our now-overturned case law. We, therefore, reverse the trial court's order granting summary judgment.[7]

*Judgment reversed. Andrews, P. J., Barnes, P. J., Phipps, P. J., Dillard, McFadden, Boggs, Ray, Branch, McMillian, Rickman and Mercier, JJ., concur. Miller, P. J. and Ellington, P. J. concur in judgment only. Doyle, C. J. not participating.*

---

[7] In the light of our ruling as to Harrison's tolling argument based on OCGA § 9-3-99, we need not reach his alternative argument based on OCGA § 9-3-94, in which he contends that Twisted Shamrock's administrative dissolution prior to the shooting rendered the entity effectively absent from the state until the defendants admitted the company's existence in their answers. A ruling in Harrison's favor on this enumeration of error would not obviate the need to evaluate our precedent on OCGA § 9-3-99, as the OCGA § 9-3-94 argument applies only to Harrison's claim against one of the defendants.