**FIFTH DIVISION**
**REESE, P. J.,**
**MARKLE and COLVIN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed. Please refer to the Supreme Court of Georgia Judicial Emergency Order of March 14, 2020 for further information at (https://www.gaappeals.us/rules).**

**May 19, 2020**

# In the Court of Appeals of Georgia

A20A0072. CUFFIE et al. v. ARMSTRONG et al.

MARKLE, Judge.

After Joetta Armstrong was injured and her husband was killed in a motorcycle accident, she hired attorney Thomas Cuffie to handle her claims against the other drivers. Dissatisfied with the representation she received, Armstrong filed a legal malpractice claim against Cuffie, the Cuffie Law Firm, and Cuffie and Associates, P. C. (collectively "the Cuffie Firm"). The trial court denied the Cuffie Firm's motion to dismiss the suit as barred by the statute of limitations and also denied its motion for reconsideration. We granted the Cuffie Firm's application for interlocutory appeal, and this appeal followed. We now affirm in part and reverse in part.

We review a trial court's denial of a motion for reconsideration for abuse of discretion. *Stephens v. Alan v. Mock Const. Co.*, 302 Ga. App. 280, 281 (1) (690

SE2d 225) (2010). "An abuse of discretion occurs where the trial court significantly misapplies the law or clearly errs in a material factual finding." (Citation and punctuation omitted.) *Postell v. Alfa Ins. Corp.*, 332 Ga. App. 22, 28 (2) (a) (iii) (772 SE2d 793) (2015). When considering a motion to dismiss, the trial court, and this Court, must construe the pleadings in the light most favorable to the plaintiff, and resolve any doubts in the plaintiff's favor. *Bd. of Regents of Univ. System of Ga. v. Brooks*, 324 Ga. App. 15, 15-16 (749 SE2d 23) (2013).

So viewed, the record shows that the accident occurred in early August 2009. Jarvis Gibson, the driver of one of the cars involved in the accident, was charged with various driving violations based on the accident. A few days after the accident, Armstrong hired Cuffie, and she signed a written contract for representation.[1]

In January 2010, Cuffie received a letter from State Farm regarding underinsured motorist ("UM") coverage under the Armstrong's policy. Neither Cuffie nor anyone else from the Cuffie Firm followed up on the UM coverage or presented a UM claim to State Farm.

---

[1] Armstrong sued on behalf of herself, individually, and as surviving spouse, and as a co-representative of her husband's estate.

2

On March 2, 2010, the Cuffie Firm filed a wrongful death and personal injury suit against Gibson and the others involved in the accident, and their respective insurance companies and employers: RLI Insurance Company, Milan Express Company, Raymond Smith, Patrick Riley, and United Road Services. On November 2, 2011, a jury acquitted Gibson of all criminal charges arising from the accident.

In August 2013, Armstrong settled her claims against RLI Insurance, Milan Express, and Smith for $1,250,000, and she signed a release for any claims she might have had against these defendants. Thirteen months later, Armstrong settled her remaining claims against Gibson for $51,000. Pursuant to a consent judgment, Gibson's insurance covered $50,000, and Gibson was responsible for the remaining $1,000. The consent judgment also included language that Armstrong was responsible for her own medical care and any lien, including those arising under the Employee Retirement Income Security Act ("ERISA"). Cuffie never advised Armstrong that the ERISA lien would remain her responsibility; rather, as Armstrong alleged in her complaint, Cuffie advised her that the lien would be "handled."

In March 2015, Armstrong's husband's employer, Siemens Corporation, sued Armstrong to collect on an ERISA lien that had been filed against her for medical bills related to her own injuries. Armstrong ultimately settled the lien for $84,885.29,

3

which was more than the original lien, and she incurred significant attorney fees in defending the ERISA suit.

In 2017, Armstrong filed suit for legal malpractice against the Cuffie Firm. She voluntarily dismissed that action and then timely filed the instant renewal action, alleging breach of contract and breach of fiduciary duty arising from the failure to seek UM coverage or to advise her about the ERISA lien.[2] She also sought attorney fees under OCGA § 13-6-11.

The Cuffie Firm filed its answer and counterclaim, and moved to dismiss the complaint as barred by the applicable statute of limitations. Relying on OCGA § 33-7-11 (d), the Cuffie Firm argued that the statute of limitations for Armstrong's malpractice claim based on the UM coverage began to run in 2011 when they could no longer seek UM coverage. Thus, the four-year limitation period applicable to legal malpractice claims expired in 2015. It further argued that the malpractice claim related to the ERISA lien was barred by the statute of limitations and failed to state a claim because it had no duty to negotiate Armstrong's medical lien. Armstrong responded, arguing that the time period to file the UM claim tolled under OCGA § 9-

---

[2] Attached to the complaint was an expert affidavit as required by OCGA § 9-11-9.1.

4

3-99 until two years from the completion of Gibson's criminal trial, and the limitations period for her malpractice suit did not begin to run until the expiration of that two-year period. As such, she asserted that her complaint was timely because it was filed before November 2017. She also contended that her malpractice claim arising from the ERISA lien was timely because the Cuffie Firm repeatedly told her throughout 2014 that the lien was being handled.

The trial court denied the motion to dismiss, summarily finding that the claims were timely filed. The Cuffie Firm moved for reconsideration, which the trial court also denied, and the Cuffie Firm then requested and received a certificate of immediate review. We granted the application for interlocutory review, and this appeal followed.

1. The Cuffie Firm first argues that the trial court erred in denying its motion to dismiss the malpractice claims arising from its alleged failure to seek UM coverage because the complaint was untimely and not subject to the tolling provisions of OCGA § 9-3-99. We agree.

"Whether a cause of action is barred by the statute of limitation generally is a mixed question of law and fact, but the question is one of law for the court when the

facts are not disputed." *Harrison v. McAfee*, 338 Ga. App. 393, 395 (2) (788 SE2d

872) (2016).[3]

"A legal malpractice action may sound either in tort or in contract, depending

on the circumstances. It has long been the law in this state that a cause of action for

legal malpractice, alleging negligence or unskillfulness, sounds in contract (agency)."

(Citation and punctuation omitted.) *Plumlee v. Davis*, 221 Ga. App. 848, 851 (2) (473

SE2d 510) (1996); see also *Hamilton v. Powell, Goldstein, Frazier & Murphy*, 167

Ga. App. 411, 412-413 (1) (306 SE2d 340) (1983). A cause of action against an

attorney sounding in contract arises from the breach of a legal duty imposed by the

contract of employment. *Long v. Wallace*, 214 Ga. App. 466, 467 (2) (448 SE2d 229)

---

[3] Our Supreme Court recently explained:

A statute of limitation has as its purpose the limiting of the time period in which an action may be brought, thereby providing a date certain after which potential defendants can no longer be held liable for claims brought on such actions. Prescribing periods of limitation is a legislative, not a judicial, function. We have described a statute of limitation as a rule limiting the time in which a party may bring an action for a right which has already accrued. Statutes of limitation are designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. The expiration of the statute of limitation may be raised as a defense to an action.

(Citations and punctuation omitted). *Dept. of Pub. Safety v. Ragsdale*, __ Ga. __ (839 SE2d 541, 543) (2020).

6

(1994). As such, it is governed by the four-year statute of limitation.[4] See id.; see also OCGA § 9-3-25. Here, Armstrong does not seek tort damages for any "injuries to the person" within the meaning of OCGA § 9-3-33. *Ballard v. Frey*, 179 Ga. App. 455, 459 (3) (346 SE2d 893) (1986). Rather, the complaint alleges a legal malpractice claim based on breach of contract for failing to serve State Farm, the UM carrier, with a claim to recover benefits. Id. Because the action sounds in contract, the four-year statute of limitations applies. *Long*, 214 Ga. App. at 467 (2). Thus, we must determine when the alleged legal malpractice claim accrued.

In Georgia, "an action for attorney malpractice accrues and the period of limitations begins to run, from the date of the attorney's breach of duty, that is, from the date of the alleged negligent or unskillful act." (Punctuation omitted.) *Royal v. Harrington*, 194 Ga. App. 457, 457-458 (390 SE2d 668) (1990). When a person injured in a car accident learns after bringing an action that the vehicle involved was uninsured or underinsured, OCGA § 33-7-11 (d) provides, in pertinent part, that

---

[4] "Georgia has no specific statute of limitation for breach of fiduciary duty claims. Instead, we examine the injury alleged and the conduct giving rise to the claim to determine the appropriate statute of limitation." *Godwin v. Mizpah Farms, LLLP*, 330 Ga. App. 31, 38 (3) (b) (766 SE2d 497) (2014). Because Armstrong's claims all arise from the contractual relationship between Armstrong and the Cuffie Firm, we apply a four-year limitation period. OCGA § 9-3-25.

the insurance company issuing the [UM] policy shall be served within either the remainder of the time allowed for valid service on the defendant or 90 days after the date on which the party seeking relief discovered, or in the exercise of due diligence should have discovered, that the vehicle was uninsured or underinsured, whichever period is greater.

OCGA § 33-7-11 (d) further requires a plaintiff to serve his UM carrier "as though the insurance company issuing the policy were actually named as a party defendant."[5] See also *Vaughn v. Collum*, 136 Ga. App. 677, 678-679 (222 SE2d 37) (1975) (holding that an uninsured motorist carrier had the right to notice of suit on the same basis as though a defendant and must be served as prescribed by statute within the applicable statute of limitations).

Here, Armstrong alleged, and the record showed, that the Cuffie Firm knew or should have known in January 2010 that a potential claim for UM coverage existed against State Farm. And this information preceded the filing of the wrongful death suit in March 2010. Thus, under OCGA § 33-7-11 (d), the Cuffie Firm had to serve State Farm as though it was a party to the suit. See OCGA § 33-7-11 (d) (where "a reasonable belief exists that the vehicle is an uninsured motor vehicle . . . a copy of

---

[5] The parties do not contest service.

the action and all pleadings thereto shall be served as prescribed by law upon the insurance company issuing the policy as though the insurance company were actually named as a party defendant."). Accordingly, the cause of action for malpractice arising from the alleged failure to seek UM coverage accrued at that time and triggered the running of the four-year limitations period. The original complaint, filed in 2017, was therefore untimely.

Armstrong contends, however, that the statute of limitations was tolled under OCGA § 9-3-99 until the resolution of the criminal case against Gibson, which occurred on November 2, 2011. She argues that she had two years from that date – or November 2013 – to seek UM benefits. See *Mujkic v. Lam*, 342 Ga. App. 693, 694 (804 SE2d 706) (2017) ("OCGA § 9-3-33 provides that actions for injuries to the person shall be brought within two years after the right of action accrues") (citation and punctuation omitted). She further asserts that the statute of limitations on her malpractice claim did not begin to run until the time in which to file for UM benefits expired in November 2013; thus, she had until November 2017 to file her complaint.

But Armstrong's interpretation misapplies OCGA § 9-3-99.[6] That statute provides, in relevant part:

> [t]he running of the period of limitations with respect to any cause of action in *tort* that may be brought by the victim of an alleged crime which arises out of the facts and circumstances relating to the commission of such alleged crime committed in this state shall be tolled from the date of the commission of the alleged crime or the act giving rise to such action in tort until the prosecution of such crime or act has become final or otherwise terminated[.]

(Emphasis supplied.) OCGA § 9-3-99.

> Our analysis here is guided by basic principles of statutory construction.

> When we consider the meaning of a statute, we must presume that the General Assembly meant what it said and said what it meant. To that end, we must afford the statutory text its plain and ordinary meaning, we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would.

---

[6] Her interpretation also ignores that Gibson *was* served with the wrongful death lawsuit in 2010, and that at the time Gibson was served, the Cuffie Firm had already received the letter from State Farm concerning UM coverage. Therefore, the cause of action for malpractice accrued at that time and, because the suit against Gibson had already been filed, there was no need to toll the limitations period.

10

(Citations and punctuation omitted.) *Deal v. Coleman*, 294 Ga. 170, 172-173 (1) (a) (751 SE2d 337) (2013). "It is well settled that where the language of a statute is plain and unambiguous, judicial construction is not only unnecessary but forbidden." (Citation and punctuation omitted.) *Norred v. Teaver*, 320 Ga. App. 508, 512 (740 SE2d 251) (2013).

The plain language of OCGA § 9-3-99 demonstrates that only *tort* actions are subject to the provision's tolling. Cf. *Williams v. Darden*, 347 Ga. App. 363, 364 (819 SE2d 524) (2018) ("By its plain language, the statute contemplates extending the time in which a victim may file a tort action where there are pending criminal charges arising out of the same facts or circumstances.") (citation omitted). Nothing in the statute tolls the limitations period for a *contract* action like the malpractice action Armstrong later brought against the Cuffie Firm. But in this case, Armstrong alleged breach of contract and breach of fiduciary duty – two claims which arise in contract, not tort. As a result, the tolling provisions of OCGA § 9-3-99 do not save her otherwise untimely complaint. See *Vaughn*, 136 Ga. App. at 678 ("Notice given in the form of service of a copy of the complaint and summons almost four years after the collision and over two and one half years after the suit was served on the individual defendants, affords the uninsured motorist carrier the benefit of the bar of

11

the statute of limitation."); see also *United States Fidelity & Guar. Ins. Co. v. Myers*, 214 Ga. App. 851, 852 (449 SE2d 359) (1994) (two-year statute of limitations for service on UM carrier did not toll until discovery of possible other driver).

Therefore, Armstrong's suit for legal malpractice based on the failure to recover UM benefits was time barred because it was filed more than four years after the alleged malpractice occurred, and OCGA § 9-3-99 did not toll the statutory period for her breach of contract claim. Compare *Harrison*, 338 Ga. App. at 398-399 (2) (b) (considering plain language of statute and concluding that it applies to any tort action arising out of the same facts and circumstances as the crime regardless of whether the other party was charged with a crime). As such, the trial court erred in denying the motion to dismiss Armstrong's complaint with respect to the alleged failure to seek UM coverage from State Farm.[7]

2. The Cuffie Firm next argues that the trial court erred in denying its motion to dismiss the claims arising from its alleged failure to advise Armstrong of the ERISA lien because this claim was also untimely. We are not persuaded.

_____

[7] In light of our conclusion, we need not address the Cuffie Firm's remaining arguments as to tolling.

In her complaint, Armstrong alleged that the Cuffie Firm failed to advise her that she would be held responsible for the ERISA lien arising from her own injuries, and this resulted in her having to settle the lien with Siemens Corporation for more than the original lien was worth and to incur substantial attorney fees. The Cuffie Firm argues that this claim accrued on May 21, 2013, when Armstrong signed the settlement closing statement. See *Villani v. Hughes*, 279 Ga. App. 618, 619 (3) (631 SE2d 709) (2006) ("The statute of limitation for legal malpractice is triggered immediately upon the commission of the wrongful act.") (punctuation omitted). Thus, it argues that the complaint, filed in July 2017, was outside the four-year limitations period.

> The closing statement provided:

> It is expressly understood, as my Attorney explained, that any outstanding bill(s) for medical services provided to *my husband*, Joseph Johnson, presently known or unknown, that may be due and payable, are the responsibility of the Estate. He further advised that if I do not compensate or reach an agreement with providers/facilities or payers (i.e., Medicare or other(s)) of the services provided, the Estate may be sued.

(Emphasis supplied.) Notably, nothing in this statement addresses Armstrong's *own* medical expenses. Moreover, in her complaint, Armstrong alleged that the Cuffie

13

Firm told her that the lien would be "handled" and she did not learn it had not been until she was sued to collect on it. Thus, the date on which this claim accrued remains in dispute. And, because this was before the trial court on a motion to dismiss, "the trial court must construe all allegations and all evidence most favorably to the respondent, and thereupon must determine whether, under any state of facts, the plaintiffs have stated a claim on which relief can be granted." (Citation and emphasis omitted.) *Wright v. Swint*, 224 Ga. App. 417, 418-419 (1) (480 SE2d 878) (1997). Because it is possible that Armstrong could show that this claim accrued within the applicable limitations period, the trial court properly denied the motion to dismiss this claim.

3. Finally, although the parties do not address the claim for attorney fees under OCGA § 13-6-11 in their briefs, because we affirm the denial of the motion to dismiss the claim based on the ERISA lien, the claim for attorney fees remains viable. *William Goldberg & Co., Inc. v. Cohen*, 219 Ga. App. 628, 635 (4) (466 SE2d 872) (1995).

Accordingly, the trial court erred when it failed to dismiss the claims arising from the alleged failure to obtain UM benefits, and we reverse the trial court's order

14

on this claim. The trial court's denial of the motion to dismiss arising from the alleged failure to advise Armstrong of the ERISA lien and for attorney fees is affirmed.

*Judgment affirmed in part; reversed in part. Reese, P. J., and Colvin, J., concur*.